[Civ. No. 6021. Third Appellate District.—March 13, 1939.]

FRANK KELLY, Appellant, v. STATE PERSONNEL BOARD OF THE STATE OF CALIFORNIA et al., Respondents.

Gerald M. Desmond and Stanley W. Reckers for Appellant.

Anthony J. Kennedy and Albert E. Sheets, as *Amici Curiae*, on Behalf of Appellant.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondents.

PULLEN P. J.—This is an appeal from a judgment refusing to issue a peremptory writ of mandate whereby it sought to compel the respondents to recognize petitioner as the holder of the position of investigator in the California Highway Patrol, and to permit him to perform the duties as such investigator.

On December 20, 1934, when the civil service constitutional amendment (art. XXIV) became effective petitioner was "blanketed in" subject to the eight months probationary period required by the Personnel Board. On August 19, 1935, petitioner was served with notice from the chief of the department advising him that his services as a member of the highway patrol were terminated. No reason was given for the dismissal in this notice, but under the rule enunciated in *Neuwald* v. *Brock et al.*, 12 Cal. (2d) 662 [86 Pac. (2d) 1047], it was not necessary to give any reason to an employee in the notice of dismissal.

There is a conflict in the evidence as to whether this notice of dismissal to the employee was served upon him during or after business hours of August 19th. Some witnesses testified the notice was delivered shortly before 4 o'clock of the afternoon of that day, and other witnesses fixed the time as after 4 o'clock. We need not, however, consider that point here as the trial court found that the notice was served before 4 o'clock and also held, with which holding we are in accord, that the probationary period did not expire until midnight on August 19th, and a notice served prior to that time is within the statutory period. "The fractions of a day are no more taken into consideration than are the fractions of the seconds. The consequence is that every day and every part of that day is one day before every part of the succeeding day." (*Cosgriff* v. *Board of Election Com. et al.*, 151 Cal. 407 [91 Pac. 98].)

The real question here for determination is whether that portion of section 9 of the Civil Service Act, which reads, "Unless such appointee shall have been dismissed within such probationary period by the appointing power

for reasons stated in writing, and filed with the Commission, his appointment shall become permanent . . . ," requires that reasons for such dismissal .be filed with the commission prior to the expiration of the probationary period.

The answer is not altogether free from doubt but a careful analysis of the construction of the language from section 9 seems to indicate that the reason for the dismissal must be so filed with the Personnel Board before the probationary period has expired.

■ The first step in the solution of the question is to apply the rules of grammar to determine if any ambiguity exists. If no such fault or uncertainty is found and there is no inconsistency in the law, the courts are not called upon to construe the meaning of the act, for the legislative intent is made clear by the language used. As said in *Frinier* v. *C. J. Kubach Co.*, 177 Cal. 722 [171 Pac. 952] : "When intent is given expression in plain and unambiguous language, courts cannot add to nor subtract from the act, unless to obviate impracticable· or absurd results." And, to the same effect, the court, in *People* v. *Stanley*, 193 Cal. 428 [225 Pac. 1], used these words: "To ascertain the intent of the legislature in enacting a statute, recourse must be had to the language of the statute itself, and if the words, given their ordinary and popular signification are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning."

A grammatical analysis of this sentence reveals a main clause "his appointment shall become permanent". The noun of this sentence is "appointment", the predicate "shall become", together with the predicate adjective "permanent". To this main clause is joined by the conjunction "unless", a subordinate clause "unless such appointee shall have been dismissed", which is limited or modified by the balance of the sentence. The verb or verb phrase of the subordinate clause is "shall have been dismissed", which is the future perfect tense of "dismiss". The future perfect tense represents an action that will be completed, or a condition that will have to come at some future time, or a future date when conditions are completed.

Webster defines the future perfect as "designating or pertaining to the tense of a verb denoting a future act or event

as past in relation to a given future time''. Curme on Syntax, page 371, discussing this tense, says: "This form represents that an action or state will be completed at or before a certain time, yet future.'' The "certain time, yet future'' in the instant case is when all the conditions required are fulfilled.

The prepositional adverbial phrases "within the probationary period, "by the appointing power'', "for reasons stated in writing and filed with the Commission'', each modify the verb "shall have been dismissed''. These adverbial phrases are coordinates of the same rank expressing conditions of time, agency, and manner, giving effect to the future perfect verb which they modify. Their order of arrangement can make no difference in the meaning of the sentence, as each is attached to the verb as a condition to its becoming effective, and can only become effective, when all of the conditions are fulfilled.

The meaning of the preposition "for'' in the clause for reasons stated in writing . . . indicates the cause, motive or occasion of the act, and is used in the sense of "because of'', "on account of'' or "in consequence of''; this clause then states the method, procedure or manner in which a dismissal is made. It is the act required in order to have a dismissal.

The legislature in their right might have required the appointing power to indicate a dismissal by filing a notice of dismissal in the office of the Secretary of State, or by requiring the appointing power to notify the state controller to execute no more warrants in favor of the employee, or by some other method by which the appointing power would be required to evidence their intention to terminate the employment. In this case the legislature has required such particular act,—that is the giving of reasons in writing and filed with the commission,—which is a condition precedent to a dismissal. This must be so in order that the future perfect verb "shall have been dismissed'' may have its full meaning. Inasmuch as the legislature has prescribed this particular action to be performed within the probationary period by the appointing power no one is authorized to vary the prescribed method of dismissal. If, as here, therefore, no such written reasons were filed with the commission

within the probationary period, it would seem that no dismissal had been effected.

 It is the contention of respondents in construing this particular provision of section 9 that the rule known as the last antecedent should be applied, a grammatical rule to the effect that relative and qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding. Such rule, however, is applicable only where there exist uncertainties and ambiguities in the statute. In Sutherland on Statutory Construction, second edition, page 812, this rule is discussed, the author there saying:

"This principle is of no great force; it is only operative when there is nothing in the statute indicating that the relative word or qualifying provision is intended to have a different effect. And very slight indication of legislative purpose or a parity of reason, or the natural and common sense reading of the statute, may overturn it and give it a more comprehensive application. (Citing cases.) Thus, as was said by the court in *Great Western Ry. Co.* v. *Swindon* (L. R. 9 App. Cas. at p. 808), referring to the phrase 'horses, oxen, pigs and sheep, from whatever country they come', the last clause would apply alike to all these animals and not alone to sheep. In furtherance of the intention it was held in that case that in the construction of the phrase 'messuages, lands, tenements and hereditaments of any tenure', the last and qualifying words, 'of any tenure', applied to all the preceding words and not merely to 'hereditaments'."

A further consideration of this rule is to be found in *People* v. *Sassovich,* 29 Cal. 480; *American Trust Co.* v. *California-Western etc. Co.*█ (Cal. App.) 76 Pac. (2d) 201; *Davis* v. *Hart,* 123 Cal. 384 [55 Pac. 1060].

It will be observed that the rule of last antecedent is invoked in those ambiguous sentences where a series of noun or noun phrases is followed by a relative phrase, the noun equivalent to the relative phrase being the last noun or noun phrase in the series, but such rule can have no application to an adverbial phrase modifying a verb. Such attempt would render the verbial phrase meaningless.

Respondents cite a number of cases, among others being: *Allen* v. *Corbett,* 25 Cal. App. (2d) 202 [77 Pac. (2d) 261]; *In re Carter,* 141 Cal. 316 [74 Pac. 997]; *People* v. *Woods,* 168 App. Div. 3 [153 N. Y. Supp. 872]; *Hall* v. *Board of State Harbor Commrs.,* 21 Cal. App. (2d) 680 [70 Pac. (2d) 199]; *Lowy* v. *Reardon,* 12 Cal. App. (2d) 748 [55 Pac. (2d) 1214]; *Kennedy* v. *State Personnel Board,* 6 Cal. (2d) 340 [57 Pac. (2d) 486]. These cases, when examined, reveal that they are either not applicable or do not involve the point here at issue.

It would appear clearly that this particular sentence being grammatically correct, free from any ambiguity or uncertainty, is not open to judicial construction. Neither the rule of last antecedent nor the doctrine of contemporaneous construction are applicable. The statute has an obvious meaning, clear in construction, language and in law, that is that a written statement of reasons must be filed with the commission prior to the expiration of the probationary period, in order to effect the dismissal of a probationer.

█ If it is material to this discussion, an examination of the report of separation filed with the State Personnel Board October 8, 1935, gives as for the reason of the separation, "dismissed—unsatisfactory service". No further reason was given therefor, although the instructions of the Personnel Board to the department contained the following: "Dismissed during probationary period for unsatisfactory conduct or capacity. Report must contain a statement of reasons for dismissal." It is obvious that "unsatisfactory service" cannot be a reason for unsatisfactory conduct or capacity.

Judge Glenn, in his opinion in commenting upon the marks given petitioner by the department, said:

"During the trial it appeared from the remarks of the court that it was deemed unfair to give petitioner a questionable mark under the caption 'loyalty'. All his marks are either 'good' or 'fair' except under the heading of 'reliability' he was marked 'poor'. He is given a mark of 69. If we take the record of performance and average his marks as indicated thereon, giving him the minimum mark in each instance, and allow no credit for the trait for which he was marked 'poor' it will be found that his average is above 69.

If under the heading of 'reliability' we give him a marking or grade of 69, and still give him but the minimum marks as indicated on the report, his average would be considerable above 69. In other words, the report itself would indicate that he was entitled to a better mark than the average of 69, . . . "

We mention this as having some bearing as to why, perhaps, no reason for the dismissal was given in the separation report. We are not concerned with any motive there may have been for the dismissal, as no showing is attempted to even indicate bad faith or fraud. (*Kennedy* v. *State Personnel Board et al.*, 6 Cal. (2d) 340 [57 Pac. (2d) 486].)

■ It is also claimed that inasmuch as petitioner accepted an appointment as deputy sheriff of Sacramento County, after the receipt of the notice of dismissal he thereby lost his right to reinstatement. The notice of severance was served August 19, 1935. Within three months these proceedings for reinstatement were commenced. In March, 1936, petitioner was appointed a deputy sheriff.

In this we see no attempt to occupy two offices, nor an effort to serve two masters. Petitioner had demanded reinstatement, which had been refused. He and his family had to live. There is nothing to show but what petitioner was immediately ready for duty if recalled by the state. It would not be reasonable to permit the state to say petitioner was not in its employ and at the same time be heard to object to him seeking to maintain himself while the question was being tested. We do not believe, however, petitioner should be permitted to profit by such employment. If petitioner was an officer of the state a different rule might apply, but we believe he was an employee only as indicated by section 360c of the Political Code. This section states:

"The Director of the Department of Motor Vehicles, the Chief, Assistant Chief and Deputy Chiefs of the California Highway Patrol, and the inspectors, captains, and traffic officers as therein provided shall constitute the California Highway Patrol and shall have the authority of peace officers with reference to the enforcement of the Vehicle Act or Vehicle Code as it is now called."

This disposes of the principal issues raised, and for the reasons herein given the judgment and order are reversed,

and petitioner reinstated, with accrued salary, less such sums paid him as a deputy sheriff of Sacramento County. Let the peremptory writ of mandate issue, as prayed for, by the trial court. It is so ordered.

Tuttle, J., and Thompson, J., concurred.