[Civ. No. 12734. Second Appellate District, Division Two.—February 17, 1941.]

ROBERT A. BROWN et al., Respondents, v. STATE PERSONNEL BOARD et al., Appellants.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Appellants.

Robert W. Kenny, Morris E. Cohn and Howland & Prindle for Respondents.

MOORE, P. J.—It having been adjudged that a writ of mandate should issue to the state board of equalization directing that petitioners be reinstated to their several positions and be paid their accrued salaries from the dates of their wrongful dismissals, appellants take this appeal. In order more successfully to enforce the judgment the State Personnel Board and certain officers of both boards were joined in the action.

Petitioners are seven in number. Prior to appointment each was certified as eligible for his position by the personnel board. In the case of each of them, except petitioner Hudelson, a dismissal was attempted after he had served as a probationer for more than four months, and in most instances petitioners actually served the required six months probationary period less from two to ten days. The reason for every dismissal given in the separation report was: "services unsatisfactory", and nothing more. The positions held by petitioners as such probationers were those of supervising liquor control officer, liquor control officer and investigator. Petitioner Hudelson, as probationer, held the position of "supervising liquor control officer" for less than one month, having occupied the same position for five months preceding the commencement of such probationary term under a temporary authorization whereby he was designated "chief liquor control officer".

The principal contention made by appellants is that certain findings are in reality conclusions of law and are contrary to settled legal principles. With respect to petitioners Brown, Torrance, McNamara and Brady, the finding is that the reports of separation in each instance were not filed with the personnel board until after the expiration of the six months probationary period, when a permanent civil ser-

vice status had been attained by those petitioners in their respective positions. With respect to petitioners Magee and Long, the court found that no written reasons for the attempted dismissals were ever filed with the personnel board and that as a result thereof those two acquired a permanent civil service status. With respect to Hudelson, the court found that no written reason for his attempted dismissal was ever filed with the personnel board; that no report of separation was filed, and that as a result Hudelson attained a permanent civil service status. With respect to all of the petitioners, it was found that the reports of separation failed to comply with the provisions of the Civil Service Act and the rules and regulations of the personnel board, in that they contained no written reasons for the dismissals.

This attack upon the findings presents for our consideration two primary questions: (1) Is it necessary in order to effect a dismissal of a probationary civil service employee that the report of separation be filed with the personnel board prior to the expiration of the employee's probationary period? (2) Is the statement that the employee was dismissed because of ''services unsatisfactory'' a proper statement of the *reasons* for his dismissal under the provisions of the Civil Service Act and the rules and regulations of the personnel board?

Section 9 of the Civil Service Act (Deering's Gen. Laws, 1913, Act 606) governs the case. That portion of the act material to our consideration provides: '' . . . All appointments shall be for a probationary period to be fixed by the commission but not to exceed six months. Unless such appointee shall have been dismissed within such probationary period by the appointing power for reasons stated in writing and filed with the commission his appointment shall become permanent.'' Unless written reasons for the dismissal of the employee were filed with the personnel board within the probationary period no dismissal was effected. (*Kelly* v. *State Personnel Board*, 31 Cal. App. (2d) 443 [88 Pac. (2d) 264].) At page 449 the court in that case said: ''The statute has an obvious meaning, clear in construction, language and in law, that is, that a written statement of reasons must be filed with the commission prior to the expiration of the probationary period in order to effect the dismissal of a probationer.'' Such a construction gives effect to all parts of

the statute. So construed, a civil service probationer is entitled to have the statutory procedure for dismissal strictly followed. (*Nilsson* v. *State Personnel Board,* 25 Cal. App. (2d) 699, at 705 [78 Pac. (2d) 467].) For like reason the court herein was warranted in concluding that the dismissals of Brown, Torrance, Magee and Brady were abortive, in that the reports of separation containing the reason for the dismissals were filed with the personnel board more than six months after the respective appointments. ■ The custom of the board of equalization in filing reports of separation after the expiration of the probationary period is of no consequence. Custom cannot overcome unequivocal statutory provisions. (*The American Nat. Bank of San Francisco* v. *A. G. Sommerville, Inc., et al.,* 191 Cal. 364 [216 Pac. 376]; *Davidson* v. *Burns,* 38 Cal. App. (2d) 188, 192 [100 Pac. (2d) 1105, 101 Pac. (2d) 568].)

■ The reason for the dismissals contained in the several reports of separation was not sufficient to effect a dismissal of petitioners. At the time the reports (except as to Hudelson) were filed with the personnel board, rule 9, section 1 of the personnel board provides as follows: " . . . If the *conduct, capacity, moral responsibility or integrity* of the probationer is found to be unsatisfactory, it shall be the duty of the appointing power to dismiss him from the office and to report the dismissal, *together with the reasons therefor,* to the executive officer of the board in writing. . . . " (Italics ours.) The statement, "services unsatisfactory", is not a compliance with the above rule requiring that the reasons for dismissal of a probationer be stated in a report of dismissal. Rule 9 directs the appointing power to dismiss a probationer if he be found unsatisfactory with respect to his conduct, his capacity, his moral responsibility or his integrity. But in reporting the dismissal reasons must be given to the executive officer. "Unsatisfactory", applied to services, is not a reason. It is the result of the probationer's misconduct, or of his lack of capacity to do his work, or of his want of integrity or of moral responsibility. It is not a statement that he had failed in respect to one or more of those qualities of head and heart. Had the author of the separation reports taken pains to peruse the printed instructions on the forms prepared for making such reports he might have learned a lesson which he had not imbibed from

the responsibilities of his office. For there he would have read: *"A dismissal during probationary period for unsatisfactory conduct or capacity. Report must contain a statement of the reasons for dismissal."* Where a report assigns as the reason for "separation" only the phrase "services unsatisfactory", or "unsatisfactory service", and no statement of fact is included with respect to the employee's lack of any one of the qualities prescribed by the statute, it is clear that there is no statement of "the reasons for the dismissal." ▆ In view of the requirement of Rule 9, a probationer's failure as to conduct, capacity, integrity or moral responsibility should be described in language intelligible to a man of ordinary understanding. (*Kelly* v. *State Personnel Board, supra.*) The dismissal of Kelly, attempted in the reported case, was made when Rule 9 allowed a discharge for unsatisfactory "conduct or capacity . . . in the discretion of the appointing power". ▆ But when these petitioners (excepting Hudelson) were dismissed Rule 9 had been amended so that it read: *"It shall be the duty of the appointing power during the probationary period . . . to investigate thoroughly his conduct, capacity, moral responsibility and integrity, to determine whether the employee is fully qualified for permanent civil service status."* Not only must the appointing power investigate such moral and mental qualities of a probationer, but he is required to make a *determination* as to "whether the employee is fully qualified for permanent civil service status." This language could mean nothing more than that the appointing power is not clothed with authority to act arbitrarily or capriciously. Its clear implication is that the investigation to be made by the "appointing power" is akin to that of any fact finding tribunal, and must be reported to the personnel board at the end of the second and fourth months of the probationary period. The language of the rule circumvents the arbitrary removal of a probationer for reasons other than for the lack of some of those qualities prescribed by Rule 9.

The case of *Neuwald* v. *Brock,* 12 Cal. (2d) 662 [86 Pac. (2d) 1047], is not in point. Neuwald was discharged prior to the amendment of Rule 9 in October of 1935. Under the rule as it stood prior to that date the appointing power was authorized to dismiss a probationer in his own discretion if "the conduct or capacity of the probationer has not been

satisfactory to the appointing power.'' Under that language not only did the appointing power have a broader discretion, but the reason assigned for the dismissal of Neuwald was in the language of the rule itself. It was because the reason stated for the dismissal of Neuwald followed the precise language of Rule 9 as it then existed that the Supreme Court approved of the dismissal. This is not akin to the language used in reporting the dismissals in the instant case and is therefore not in point.

■ Hudelson stands in a situation quite different from that of the other petitioners. Nevertheless the foregoing discussion applies with equal force to his case. His attempted dismissal preceded by three months the aforementioned amendment to Rule 9. But the mere fact that the rule at that time required only a want of ''capacity'' or ''conduct'' to satisfy the discretion of the appointing power did not relieve the latter of the obligation which obtained then, to wit, that reasons for dismissal must be stated in the report of the appointing power. ''Unsatisfactory services'' was not a compliance with Rule 9 prior to the amendment.

It is immaterial that the report of separation stated that Hudelson was dismissed from the position of ''chief liquor control officer.'' Since that was the former name of the position which he held as probationer, there is no merit in the point urged by him that the ''dismissal'' failed because of the discrepancy in the name of his position recited in the separation report. Giving the office either name, the dismissal was abortive because the reasons assigned therefor were an insufficient compliance with Rule 9.

The contention is made that the findings that petitioners were dismissed for political purposes are not supported by the evidence. This becomes immaterial in view of our decision that the dismissals were ineffective.

■ It is earnestly urged that by reason of the fact that the present proceeding was commenced from two to two and a half years after the attempted dismissals of the several petitioners their action is barred by laches. The existence of laches is a fact the determination of which is left largely to the discretion of the trial judge by a consideration of all the circumstances of the case. His determination will not be disturbed unless a manifest injustice has been done or unless his conclusion is not reasonably supported by the evidence.

78

(*Wolpert* v. *Gripton,* 213 Cal. 474 [2 Pac. (2d) 767]; *Akers* v. *Hufford,* 128 Cal. App. 146 [16 Pac. (2d) 802].) The instant action was filed February 14, 1938. The trial court made complete findings on the plea of laches and concluded that the action of petitioners is not barred on that account. The substance of the findings is as follows: The resolutions of dismissal as to each of the seven were adopted on the following dates, to wit: Hudelson, July 30, 1935; Brown, December 23, 1935; Long, February 5, 1936; the other four, January, 1936; that immediately after the attempted dismissals petitioners notified the appellant boards of their claims of wrongful dismissal and demanded reinstatement; that petitioners were diligent in making repeated demands for reinstatement; that petitioners were informed that their cases would be investigated and that they would be reinstated if their claims were just; that petitioners were told that other employees who had been dismissed at the same time had commenced actions to obtain their reinstatement, and that the board of equalization requested petitioners to refrain from commencing any actions to enforce their rights until after the pending litigation had been decided; that in December of 1937 the pending litigation was settled and those petitioners were reinstated, following which the board of equalization advised petitioners that they also would be reinstated; that the board of equalization was not obligated to employ persons to occupy the positions of petitioners after their attempted dismissals, but that the board did in fact employ such persons; that Ray Edgar and John C. Corbett, members of the board of equalization at the time of the attempted dismissals, had died prior to the time of trial and that two other employees had also deceased, but that appellants made no offer to prove what such deceased persons would have testified to had they been present at the trial, and that accordingly no prejudice resulted to appellants in the presentation of their defense.

There is no fixed rule as to the circumstances that must exist or as to the period of time which must elapse before the doctrine of laches can be appropriately applied. (10 Cal. Jur. 526.) ''The matter is one which reposes in the sound discretion of the chancellor.'' (*Ibid.*) While definite principles guide the courts in determining whether a litigant has been diligent, precedents are of little value, for it is

all of the facts of each case which must determine whether a petitioner has been guilty of laches. (*LaShells* v. *Hench*, 98 Cal. App. 6 [276 Pac. 377].) One of the guiding rules in determining the rights of a petitioner under a plea of laches is that he must be diligent. Where one seeks a writ of *mandamus* to compel his reinstatement to a civil service position after a wrongful discharge he must act promptly. (*Hayman* v. *City of Los Angeles*, 17 Cal. App. (2d) 674 [62 Pac. (2d) 1047].) If because of his delay in seeking his remedy, without offering a satisfactory explanation for the delay, a prejudice results to his adversary, he will be precluded from enforcing his demand. It is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change *in statu quo, ante,* i. e., no detriment suffered by the party pleading the laches, his plea is in vain. (*Hayman* v. *City of Los Angeles, supra,* p. 680.)

There was no abuse of discretion in holding that petitioners Brown, Brady and Hudelson were not guilty of laches. The evidence is amply sufficient to support the findings of the court as to those petitioners. Immediately following the attempted dismissals they demanded of a member of the board of equalization that they be reinstated. Such demands for reinstatement were repeated prior to the institution of the present action. Both of them were requested by an officer of the board to take no legal action to enforce their reinstatement until after the determination of proceedings then pending on behalf of other dismissed employees to secure their reinstatement. Both Brown and Brady requested hearings before the personnel board. Their motions for reinstatement were continued from time to time until they were finally dismissed. With respect to petitioner Hudelson, the evidence shows that he did not make such frequent demands for reinstatement as did Brown and Brady immediately following their attempted dismissals. Having communicated with the personnel board with reference to his reinstatement, Hudelson employed an attorney to enforce his rights.

It is thus clear that the board of equalization, immediately following the attempted dismissals of the three above-named petitioners, had knowledge that all three insisted upon their asserted rights to be reinstated. The finding of the court

that the long delay on the part of Brown and Brady in instituting their action to secure reinstatement was excusable is justified by the proof of their continual efforts to enforce their rights and by the evidence of their compliance with the request of the board to await the outcome of the litigation then pending. While the evidence of Hudelson's attempts to gain reinstatement is not sufficient to prove an adequate excuse for his long delay in filing suit, at the same time there is no evidence that appellants were prejudiced by the delay. It was *stipulated that no person was employed to fill the position of supervising liquor control officer, Grade 2,* from which the board had attempted to discharge Hudelson. The only material prejudice which the board could have suffered under the circumstances would have been the payment of a salary to the person taking Hudelson's place, as well as paying the accumulated salary of Hudelson for the same period of time.

With reference to petitioners Torrance, Magee, McNamara and Long, it is clear that the evidence does not support the findings of the court that they were diligent in presenting their claims for reinstatement. (a) Magee gave no testimony whatever at the trial. There is no evidence that the board of equalization ever knew of his demand for reinstatement. It does not appear that he made any effort to regain his position by reinstatement at any time prior to the commencement of this action. (b) Petitioner Torrance testified that prior to his dismissal he conversed with a former member of the board of equalization, and that four months after his attempted dismissal he talked with the chief liquor control officer of the board concerning the possibility of his employment in one of several vacancies. But in neither conversation was the subject of his reinstatement in his former position mentioned. (c) Petitioner McNamara testified that upon receiving notice to the effect that he was dismissed he discussed with his superior officer the reason for the attempted dismissal. Following a consultation with a deputy attorney-general upon the subject shortly after receiving his notice on January 22, 1936, he was advised that the dismissal was valid. In the latter part of February, 1936, McNamara conferred with a member of the board of equalization, who advised him that his best course was to apply for another position. Thereafter he was informed by an admin-

istrative assistant to the board that there were then numerous vacancies. Then, for the first time, by writing he requested the personnel board to restore his name to the eligible list for the position of collector, and by letter inquired concerning the possibility of being reinstated to his former position of investigator. In reply he was informed that his reinstatement could come only through the board of equalization. There is no evidence that he ever requested the last-named board to reinstate him. He had knowledge of the proceedings which had been instituted by other employees to effectuate their reinstatements. Although requested to join in those actions he refused to do so. (d) Following the adoption of the resolution to dismiss petitioner Long, that gentleman stated his grievance to the office of the lieutenant-governor and lodged a protest with the board of equalization. Thereafter for a period of six months he made repeated attempts to confer with two members of the board of equalization. Also, he wrote letters to the board demanding to know the reasons for their action in attempting to dismiss him. All of the petitioners engaged an attorney in December of 1936 to try to effectuate their reinstatement. But there is no proof as to what action, if any at all, was taken by such attorney.

Since the evidence fails to support the findings of diligence on the part of the four last-mentioned petitioners in prosecuting their demands to be reinstated, it follows that if their laches resulted in any prejudice to appellants the judgment is not supported as to them. If such prejudice did result, it must have been because of the employment of others, after the attempted dismissals, to perform the duties done by petitioners as probationers; or because material witnesses had deceased prior to the trial; or because such changes had been made in the law and in the rules governing the activities of the board of equalization as would require an unreasonable time for petitioners, after reinstatement, to gain a ready knowledge of such changes.

The only evidence relating to the employment of other persons to fill the positions formerly occupied by the four last-mentioned petitioners is to the effect that, after the several dismissals, other persons were employed to fill such positions. But there is no evidence that, after the attempted dismissals and prior to the time when this suit was commenced,

other persons were employed to fill the positions of those petitioners. Had substantial evidence to that effect been received it would have constituted proof that appellants had been prejudiced by the delay of such petitioners. The only approach to such proof is that certain persons were appointed to fill the positions formerly held by those four petitioners *after* the attempted dismissals. Under such circumstances the familiar rule that all intendments must be invoked in support of the judgment of the trial court applies. Accordingly it must be presumed in support of the findings and judgment that such persons, holding the positions once occupied by the four last-mentioned petitioners, were employed after the present action was commenced. Basing our conclusion upon that presumption, we must hold that no prejudice could have resulted to the board from the delay. This is true since the board had notice of the claims for reinstatement at the time the new employees were installed in the positions formerly occupied by the named petitioners.

The contention that the delay was prejudicial because it resulted in the loss of the testimony of witnesses who deceased prior to the trial is untenable. Appellants failed to make any offer of proof of the matters concerning which such witnesses could have testified had they been living at the time of the trial. Consequently we are unable to determine the materiality of such testimony. Since the dismissals were ineffective as a matter of law, such testimony could not have been material in any event. If such testimony had been directed to the reasons for the dismissals it would not be material, for the very good reason that the grounds for such attempted dismissals were of no importance.

The contention that if petitioners are reinstated the board will have to re-educate them in the changed procedure is likewise unavailing. No evidence was offered to prove that petitioners are not familiar with all of the changes in the laws, rules and procedure relating to the business of the board which have occurred since their respective dismissals. In the absence of such proof we must presume that petitioners are familiar with such laws, rules and changes thereof, and that therefore no prejudice has been suffered on that account.

The final contention, that the causes of action of petitioners are barred by section 14a of the Civil Service

Act, cannot be sustained. That section provides: "Whenever it is necessary because of lack of work or lack of funds, or whenever it is advisable in the interests of economy to reduce the staff of any department or agency in the state service, the appointing power may . . . lay off employees according to the procedure set forth in this Act, and the rules and regulations thereunder. . . . " (Stats. 1933, chap. 214.) The act further provides that any action brought by a discharged employee against the appointing power must be filed within one year, and if compensation during the lay-off is sought it must be commenced within ninety days. From the portion of the section which we have quoted it is obvious that it is not intended to apply to outright dismissals but only to suspensions. A suspension is authorized in three situations only: when there is a lack of work, lack of funds or in the interests of economy. In the instant case dismissals of all of the petitioners were attempted because their services were not "satisfactory", and not for any of the reasons which would authorize a "lay-off" or suspension. Moreover, there is no evidence that there was a lack of work or a lack of funds or that petitioners were discharged in the interest of economy. Therefore, the provisions of section 14a regarding the time within which an action under that section must be instituted are not applicable to the instant case.

The judgment is affirmed.

McComb, J., concurred.

WOOD, J., Concurring.—I concur in the judgment in so far as it concerns petitioners Brown and Brady. I do not concur in the view that the other petitioners are not barred by laches. If their petitions had been promptly filed the state would not now be compelled to pay to them salaries for a long period of time during which the benefit of their services was not received.

Appellants' petition for a hearing by the Supreme Court was denied April 17, 1941. Curtis, J., voted for a hearing. Traynor, J., took no part in the consideration or decision of this matter.