[Civ. No. 11189. First Appellate District, Division One.—February 25, 1941.]

HARRY A. BALLF, Respondent, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Harry A. Ballf, *in pro. per.*, for Appellant.

John J. O'Toole, City Attorney, Edmond P. Bergerot, Norman Sanford Wolff and Thomas P. Slevin, Deputies City Attorney, and L. R. Bunney for Respondents.

KNIGHT, J.—This proceeding in *mandamus* was instituted in the superior court by the plaintiff, Harry A. Ballf, to compel the defendants, Civil Service Commission of San Francisco and the members thereof, to certify his name to the board of supervisors as appointee for the position of "General Clerk-Stenographer" in the office of said board. Judgment was entered in his favor, and the defendants appeal.

The controversy arises out of the following situation: In March, 1938, Fred Moran resigned as bond and ordinance clerk of the board of supervisors; and shortly afterward Robert J. Dolan, then occupying the position of general clerk-stenographer (B–408) for a probationary period in the office of the purchaser of supplies, requested transfer to the position left vacant by Moran's resignation. The request was denied, for the reason, among others, that the position sought by him with said board was of a classification different from the one he then held. During the following month, April, 1938, proceedings were initiated to reclassify the position in the office of said board as general clerk-stenographer (B–408), the same classification as the one then held by Dolan. The reclassification became effective on July 1, 1938, the operative date of the salary ordinance of the city for the year 1938–1939; and on July 17, 1938, Dolan renewed his application for transfer to said position.

Section 142 of the charter provides that with exceptions not here pertinent "All positions in all departments and offices of the city and county . . . shall be included in the classified civil service of the city and county, and shall be filled from lists of eligibles prepared by the civil service commission . . . "; and section 148 of the charter provides: "Whenever a position controlled by the civil service provisions of this charter is to be filled, the appointing officer shall make a requisition to the civil service commission for a person to fill it. *Thereupon, the commission shall certify to the appointing officer the name and address of the person standing highest on the list of eligibles for such position. . . .* " (Italics ours.) In conformity with the requirements of the latter section the board of supervisors on August 19, 1938, filed a requisition with the commission for a person to fill the newly created position of general clerk-stenographer (B–408), the appointee to report for duty on August 29, 1938. The respondent Ballf, then occupying a position as general clerk-

typist (B–512) in the recorder's office, stood at the top of the current list of eligibles for the position of general clerk-stenographer (B–408); whereas Dolan stood ninth on the same list; and in furtherance of his efforts to secure the position with the board of supervisors, Dolan obtained waivers from all those ranking above him on said eligibility list except Ballf, who, desiring the position himself, declined to give such waiver. Nevertheless, the commission refused to certify Ballf's name to the board of supervisors, and on September 2, 1938, transferred Dolan to the position in question.

We agree with the conclusion reached by the trial court that the action of the commission in so doing was violative of the provisions of said section 148 of the charter above quoted, which imposes the imperative duty upon the commission to certify the name of the person ranking highest on the current list of eligibles for the position to be filled. In fact appellants themselves concede that such is the mandate of the charter, for in their brief they say: "In most jurisdictions wherein the merit system is in effect the appointing officer may select one of the three highest eligibles. This gives the appointing officer a choice. In this jurisdiction the appointing officer must take the highest eligible." But in justification of their action in disregarding the current list of eligibles and giving Dolan priority over Ballf, appellants rely on the opening clause of the concluding sentence of a rule theretofore adopted by the commission, relating to the matter of transfers of employees from one office to another. It is known as rule 34, and declares, among other things, that whenever, in the judgment of the commission, it is for the best interests of the service, an employee holding permanent appointment under one appointing officer may, upon his written request, be transferred by the commission to a permanent regular position *"of the same class"* under another appointing officer, providing the employee first obtains the approval of the appointing officers of the departments concerned; furthermore, that a person so transferred shall begin as a new appointee and serve a probationary period; and that the acceptance of such transfer by an appointee "shall immediately and automatically cancel all his rights in the position from which he was transferred." Toward the end the rule declares: "In making transfers under this Section, preference shall be given to the appointee who has a clean record and who has had the longest service under Civil Service permanent ap-

pointment in his class''; and the rule concludes: *''Unless otherwise ordered by the Commission,* no appointee from a current list of eligibles may transfer to a permanent position carrying regular salary unless such appointee has examination rank higher than that of the highest eligible remaining on such current list.'' (Italics ours.)

It is manifest, however, that the discretionary power the commission thus purports to confer upon itself by virtue of the concluding sentence of said rule may not be invoked in a situation such as the one here presented, because, as shown, the charter in mandatory terms declares that in response to a requisition made by the appointing officer the commission must certify the name of the person standing highest on the current list of eligibles for the office to be filled, which in this case was Ballf; and it is a fundamental principle of municipal law that the rule-making power vested by a city charter in a municipal agency must be exercised in conformity with all charter provisions, and that any rule adopted by such agency which has the effect of opening the way to circumvent or nullify charter provisions is, to that extent, inoperative and void. Upon reading the entire rule it is quite obvious that its purpose was to establish a procedural set-up to be followed in matters of transfer, none having been provided by the charter; and that it was intended that the discretionary authority the commission conferred upon itself by the concluding sentence of the rule, as well as that embodied in the proviso relating to ''clean record'' and ''longest service'', should be exercised in those situations where requests were made by two or more employees holding permanent appointments of the same classification, for transfer to a permanent position of the same classification under a different appointing officer. But here the commission was not dealing with that kind of case. Ballf was not seeking ''transfer'' to the position with the board of supervisors; nor indeed under rule 34 would he have been permitted to do so, because the permanent position held by him in the recorder's office was of a classification different from the position to be filled in the office of the board of supervisors; that is to say, his position in the recorder's office was that of general clerk-typist (B–512); whereas the position with the board was that of general clerk-stenographer (B–408). His legal right to certification to the latter position arose from the fact that he ranked highest on the current eligible list of appointees for a perma-

nent position of that classification; therefore, when the board filed its requisition with the commission for a person to fill a position of that classification, it was the mandatory duty of the commission under the plain wording of section 148 of the charter to certify Ballf's name to the board. Neither the commission nor the board had any choice in the matter.

■■ We are of the opinion also, however, that the trial court exceeded its authority in incorporating in the judgment provisions relieving Ballf of the "necessity of passing a probationary period" in the position in the office of the board of supervisors, and in fixing July 1, 1938, as the date of the commencement of his seniority therein. Proper provision was made that he was not entitled to the salary of the office until he reported for duty; but the date of seniority should have been fixed as of September 2, 1938, such being the date he was entitled to have his name certified to said board.

With respect to the matter of the probationary period, said section 148 of the charter, which is the basis of Ballf's right to certification, also contains this provision: "Any appointment to a position declared permanent by the commission [and this was such a position] shall be on probation for a period of six months. At any time before the expiration of six months the appointing officer may terminate the appointment." We find nothing in the arguments advanced by respondent which would tend to take the case out of the operation of the foregoing charter provision. The theory upon which the trial court apparently acted in inserting the provision was that if the commission had complied with the terms of the charter in certifying respondent's name to the board, he would, at the time of the entry of the judgment, have served the probationary period. The unequivocal language used in section 148 shows, however, that actual service, rather than constructive, is required.

■ The trial court also incorporated in its judgment a provision to the effect that respondent be granted a leave of absence, without pay, from his present position in the recorder's office (B–512) while serving the probationary period in the position in the office of said board (B–408). This provision doubtless finds support in section 153 of the charter, which fixes a limitation of six months for a leave of absence to an employee accepting a position in some office of the city and county other than the one in which he is employed and

where the duties are in no way related to the duties covered by his civil service classification, which, reasonably construed in the light of the language of the entire section, means the classification of the position he leaves to accept the position of different classification. A different situation is presented in the case of transferees under rule 34, because there, by the very wording of the rule, the employee is notified in advance that immediately upon his acceptance of the position to which he is transferred all rights to the position he leaves are automatically cancelled.

In accordance with the views above expressed, it is ordered that the judgment be modified by striking therefrom the provision eliminating the necessity of serving the probationary period, and by substituting the date September 2, 1938, for July 1, 1938; that as thus modified the judgment be and it is hereby affirmed; that a peremptory writ issue in conformity with the terms of the judgment as modified, and that respondent recover his costs of appeal.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 27, 1941, and appellants' petition for a hearing by the Supreme Court was denied April 24, 1941.