[Sac. No. 5490. In Bank. Feb. 2, 1942.]

ELMER J. WILES, Appellant, v. STATE PERSONNEL BOARD et al., Respondents.

Albert E. Sheets and Anthony J. Kennedy for Appellant.

Earl Warren, Attorney General, and Wilmer W. Morse and Bayard Rhone, Deputies Attorney General, for Respondents.

CURTIS, J.—Petitioner has appealed from a judgment of the trial court refusing to grant a writ of mandamus to require respondents to reinstate him to the permanent position of Personnel Record Officer of the California National Guard, with full and permanent civil service status therein, and to pay his fixed salary of $140 per month from March 4, 1939.

On March 1, 1938, petitioner received a temporary appointment to the position in question. On August 13, 1938, after qualifying by examination, he was appointed to the permanent position. This appointment was subject to a probationary period of six months under rule nine, section 1, of the Rules and Regulations of the State Personnel Board. On September 11, 1938, while engaged in the performance of the duties of his position, petitioner sustained a back injury, which caused his hospitalization from that date to October 24, 1938. Upon the advice and at the direction of his superiors, petitioner continued to perform a part of his official duties while he was confined in the hospital. During this period petitioner did not receive his salary but was paid disability compensation from the State Compensation Insurance Fund. After dismissal from the hospital petitioner continued to perform the duties of his position until February 10, 1939. On that date the new Adjutant General, who had taken office on January 4, 1939, served petitioner with a letter dated February 9, 1939, advising him that his services would be terminated on March 4, 1939. This letter contained the reasons

for rejection, as required by section 122 of the State Civil Service Act, and a copy was sent to the Personnel Board and received by it on February 11, 1939. A Report of Separation and a Report of Performance were filed with the Personnel Board on February 20, 1939. Neither of these reports was served on petitioner. Petitioner was paid up to and including the 3rd day of March, 1939, although he was prohibited from performing the duties of his position from February 10, 1939.

On this appeal it is contended that there was no rejection of the services of petitioner within the probationary period, and further, that the appointing authority did not comply with the statutory method of dismissal.

The probationary period began on August 13, 1938. Without interruption that period of probationary service normally would have been terminated on February 12, 1939. There was, however, a six-week period in which petitioner was hospitalized. Therefore, the first question to be determined is whether the date of termination of the probationary period was extended to March 20, 1939, because of the period of hospitalization.

The object and purpose of a probationary period is to supplement the work of the civil service examiners in passing on the qualifications and eligibility of the probationer. During such period the appointive power is given the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then he may be discharged by the summary method provided for in the Civil Service Act before he acquires permanent civil service status. [See *Neuwald* v. *Brock*, 12 Cal. (2d) 662, 670 [86 Pac. (2d) 1047] ; Note: 131 A. L. R. 383.]

In the instant case the record discloses that petitioner's superiors, General Morehead, who was at that time the Adjutant General, and Colonel Arndt, the executive officer of the National Guard, came to visit petitioner in the hospital soon after the accident and made arrangements whereby he was to carry on the duties of his office. During the period petitioner kept in daily contact with his office by telephone and in this way continued to supervise the work being done in the office. Office correspondence was brought out to petitioner by messenger service. Some dictation was given by

petitioner at the hospital relative to office matters, and other work was written out in longhand by petitioner, sent to the office, typed and returned to petitioner for his signature. An electric adding machine was furnished petitioner so that he could continue to audit current accounts. General Morehead and Colonel Arndt came to the hospital frequently and General Morehead testified that petitioner performed the duties of his office satisfactorily. The trial court found ''that it is true that during the period of said confinement at said hospital petitioner as said Personnel Record Officer and as ordered and directed by and acting under the supervision of the adjutant general of the State of California, performed part but not all of his duties.''

From these facts it is clear that the purposes and objects of the probationary period were fulfilled during the time petitioner was in the hospital. Under such circumstances that time should not be deducted from the probationary service. This conclusion should not be interpreted to mean that in every case the probationary period terminates after six months' elapsed time from the date of appointment. It is possible, as urged by respondents, that a situation might arise in which a probationer because of illness would be forced to sever all relations with his office and duties a few days after his appointment. If such absence continued for a period of six months, the purpose of the probationary period would be defeated if that period were held to be terminated after six months' actual elapsed time from the date of appointment. In such a situation the time spent away from the position should not be included in determining the termination of the probationary period. However, as previously shown, petitioner here continued to do his work under direct supervision of the appointive power during his absence from the office. His work while in the hospital met the approval of General Morehead, the adjutant general, who immediately upon petitioner's recovery from his injury continued him in the position to which he had been appointed. It thus appears that full opportunity to observe petitioner's conduct during his entire probationary period was afforded his superiors.

The fact that petitioner did not receive his salary but received disability compensation during the period of hospitalization is not necessarily determinative of the question of

whether he performed services during that period. The record is not entirely clear on the question of compensation. There is evidence and, in fact, the attorney for petitioner stipulated that "he [petitioner] received compensation," but the attorney stated that he didn't know whether it was for total disability. Petitioner himself, in answer to a question as to whether he received compensation for total disability, stated that he didn't know. Respondents didn't introduce any documentary evidence of a rating or an award by the Industrial Accident Commission. There being no evidence that the commission had determined after a hearing that petitioner was totally disabled, the trial court was free to find that petitioner had performed some of the duties of his position while he was in the hospital. The court did so find, and this finding is supported by undisputed evidence.

■ Respondents also contend that petitioner, having accepted compensation, is estopped from asserting that he performed the duties of his position during the period of hospitalization. Here again, the contention is based on the assumption that petitioner knowingly accepted compensation for total disability. As previously stated, this assumption is not supported by the evidence. If a claim were now being made for salary for the time spent in the hospital, respondents might properly plead estoppel, but here petitioner is simply asserting that he performed sufficient of the duties of his position while in the hospital to include that time as a part of his probationary service. Under such circumstances and keeping in mind the purpose of the probationary period, there appears to be no place for an estoppel argument.

Our conclusion that the time spent in the hospital should not be deducted from the period of probationary service in no way conflicts with any statements made in the case of *Ballf* v. *Civil Service Commission,* 43 Cal. App. (2d) 211 [110 Pac. (2d) 478], cited by respondents. The principal statement in that case relied on by respondents is the following, at p. 216: "The unequivocal language used in section 148 [a section of the Charter of the City of San Francisco similar to Section 118 of the State Civil Service Act and the rules adopted thereunder] shows, however, that actual service, rather than constructive, is required." Such statement has no application to the instant situation, for here there

is no question of constructive service, but, as previously discussed, petitioner performed the actual duties of his position during the period of hospitalization.

■ Having concluded that the period of probationary service terminated on February 12, 1939, the question remains whether petitioner was properly rejected on or before that date. The letter of rejection dated February 9, 1939, and served on petitioner on February 10, 1939, opened with the sentence *"Effective March 4, 1939,* your services as Personnel Officer, California National Guard, *will be terminated."* [Italics added.] The reasons for termination were then stated and the letter concluded with the following sentence: "You will be allowed your accumulated vacation from February 10th to March 3, 1939, inclusive." Petitioner argues that this notice of rejection, although given before the termination of the probationary service on February 12, 1939, was not made effective until after that date or on March 4, 1939, and that therefore he became a permanent employee, subject to dismissal only by the procedure provided for under section 173 of the Civil Service Act, which procedure was admittedly not followed.

In view of the italicized portion of the opening sentence, there would seem to be little that could be said in opposition to petitioner's contention. However, respondents contend and the trial court concluded that petitioner was rejected on February 9, 1939. In support of this contention and conclusion respondents refer to rule thirteen, section 1, of the Rules and Regulations of the State Personnel Board, which provides, in part, that after six months of continuous service a civil service employee is entitled to a vacation on the basis of one and one-quarter working days for each month or major portion of a month of service up to the first of January next following the completion of such six months of service, and thereafter a vacation of fifteen working days per year. Under this rule it is claimed that petitioner, having commenced work on a temporary basis on March 1, 1938, was entitled to fifteen days' vacation time. Reference is then made to the last sentence of the letter of rejection, which stated: "You will be allowed your accumulated vacation from February 10th to March 3, 1939, inclusive." It is then argued that the rejection was effective immediately, i. e., on February 9, 1939, but that it, of necessity, had to be phrased in the

future tense because of the accumulated vacation period. Petitioner challenges the number of days' vacation to which respondents assert he was entitled; however, that issue need not be decided here. Regardless of the accumulated vacation time, the fact is that petitioner's services were not terminated until after February 12, 1939, the final day of the probationary period. The notice of rejection on February 9, 1939, did not state: "Your services *are* terminated." It stated: "Effective March 4, 1939, your services . . . will be terminated." The roster card listed the date of dismissal as March 4, 1939. The Report of Separation stated March 4, 1939, as the date of separation from service. Petitioner was paid salary upon pay rolls on which he was certified as holding his position under civil service until March 4, 1939. No amount of argument can change the future tense to the present tense so that the rejection may be deemed to have been made prior to the termination of the probationary period. If notice of a future dismissal within the six months' probationary period were all that was required under section 122 of the Civil Service Act, then the probationary status could be extended indefinitely. ■ Assuming that petitioner did have some vacation time coming, such fact would not have prevented a present rejection on February 10, 1939. The question of a probationer's right to accumulated vacation time on dismissal is not directly before us on this appeal because petitioner is not claiming that he was deprived of any vacation time. However, it might be observed in this regard that there seems to be no reason why a state employee at the time of his dismissal could not properly claim a sum equivalent to the accumulated vacation time due him. Section 150 of the Civil Service Act and the rules of the Personnel Board established thereunder become a part of the contract of employment, and after the time of service required, the vacation period or the money equivalent thereof becomes a right under the terms of his employment.

■ It may be true that respondent Farrell intended an immediate rejection on February 9, 1939, but, as previously pointed out, there was no such rejection accomplished by the notice given. A civil service probationer is entitled to have the statutory procedure for dismissal strictly followed. (*Brown* v. *State Personnel Board*, 43 Cal. App. (2d) 70 [110 Pac. (2d) 497]; *Nilsson* v. *State Personnel Board*, 25 Cal.

App. (2d) 699 [78 Pac. (2d) 467].) The procedure here required rejection within the six months' probationary period. This procedure was not followed and the mere intent to dismiss within the period was not sufficient. A rejection not having been accomplished within the probationary period, no dismissal was effected. (*Brown* v. *State Personnel Board, supra; Kelly* v. *State Personnel Board,* 31 Cal. App. (2d) 443 [88 Pac. (2d) 264].) Therefore, the trial court erred in refusing to issue the writ of mandate ordering petitioner's reinstatement.

■ Petitioner has asked for his accrued salary from March 4, 1939. The record fails to disclose what other employment, if any, petitioner has engaged in subsequent to that date. If he has had some gainful employment, it is only equitable and just that any remuneration received from such employment be deducted from the accrued salary due him. [See *Kelly* v. *State Personnel Board, supra.*]

For the foregoing reasons the judgment and order appealed from are reversed and the trial court is ordered to issue its writ of mandate requiring the reinstatement of petitioner with accrued salary from March 4, 1939, less any sums received by petitioner as salary from employment subsequent to that date. What sums, if any, petitioner has received should be determined by further appropriate proceedings in the trial court.

Shenk, J., Houser, J., Carter, J., concurred.

EDMONDS, J., Dissenting—I agree that the petitioner's period of probationary service terminated on February 12, 1939, but, as I read the record, legally effective action was taken before that date to dismiss him from the civil service.

The letter of rejection is dated February 9, 1939, and was served on him the following day. At that time there had accumulated to the petitioner's credit a vacation of 15 working days. (Sec. 150, *Civil Service Act.*) In dismissing him, the adjutant general recognized his right to these days under the terms of the statute and a rule of the State Personnel Board, based upon it, which provides: "When an employee is separated from the service and has not been granted his vacation, he shall be entitled to unused portions of vacation accumulated from the previous year and to vacation on the basis of one and one-quarter days for each month or portion

of a month of service from the first of the calendar year until the date of his separation, but not to exceed thirty working days." (Sec. 4, rule 13.)

The petitioner relies entirely upon the fact that the letter of dismissal fixes March 4th as the effective date of the termination of his services. But the letter, read in its entirety, clearly evidences the adjutant general's present intention on February 9th, within the probationary period, to discharge the petitioner. He stated that during the probationary period the petitioner "failed to carry the responsibilities and duties prescribed for this position" and that he found it necessary to take action "for the good of the service." However, as the petitioner was then entitled to some vacation days, the termination date, so far as the petitioner's right to salary is concerned, was placed at the expiration of that vacation allowance. Under these circumstances, in my opinion, the adjutant general rejected the petitioner as an employee within the probationary period by notice, which included the reasons therefor, served and filed within that time.

The statute provides that a probationer may be rejected during the probationary period. It does not require that, in the event of a rejection, all relations between the probationer and the State are at that moment ended. There are certain incidents to his employment which may carry over. For example, there is no requirement that the employee be paid his accrued salary to the date of the rejection as a condition precedent to the rejection becoming effective. Failure to hand him his salary warrant with the notice of rejection would not invalidate the rejection. Similarly, accumulated vacation time is one of those incidents, which like unpaid salary, carries over, and the fact that a probationer may have accumulated vacation time to his credit at the end of the probationary period should not be held to affect the rejection if made during the statutory period and in accordance with the requirements laid down.

For these reasons, I believe the judgment should be affirmed.

Gibson, C. J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied March 2, 1942. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a rehearing.