[Civ. No. 14611.   First Dist., Div. One.   Mar. 22, 1951.]

VINCENT  DONA,  Appellant,  v.  STATE  PERSONNEL
BOARD  et  al.,  Respondents.

Chas. N. Douglas for Appellant.

Edmund G. Brown, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondents.

PETERS, P. J.—Petitioner holds permanent civil service status as an assistant warden with the Fish and Game Commission.  He took and passed the examination for the higher

position of warden, and received a probationary appointment as warden. On September 16, 1947, well within the probationary period of six months, the appointing power served upon petitioner a notice of rejection and dismissal. Petitioner challenged his dismissal, and a hearing was had before a hearing officer of the State Personnel Board. That board affirmed petitioner's dismissal as warden. Petitioner then applied to the superior court for a writ of mandate to review the decision of the Personnel Board. That court tried the case on the record produced before the board, and found that the notice of rejection served on petitioner complied with the law; that the allegations of the rejection were supported by evidence; and that petitioner was rejected during his probationary period for reasons relating to his qualifications, the good of the service and for his failure to demonstrate merit, efficiency and fitness. Judgment was entered accordingly. Petitioner appeals, contending that the notice of rejection was insufficient, and that the evidence is insufficient to support the facts set forth in the notice. There is no merit in either point.

A notice of rejection must be served upon a probationary employee. Section 19173 of the Government Code as it read on September 16, 1947,* provided:

"Any probationer may be rejected by the appointing power during the probationary period for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility.

"Notice of rejection accompanied by a statement of the specific reasons therefor, truthful within the knowledge of the appointing power or other officer or person in charge of the employee, shall be filed by the appointing power with the board and a copy served upon the probationer to give effect to the rejection."

The notice of rejection must, under this section, be accompanied "by a statement of the specific reasons therefor." It is not sufficient for the appointing power simply to give its conclusions, unsupported by facts. Thus in *Bryant* v. *State*

---

*The date the notice of rejection was served on appellant. The section was amended in 1947 (Stats. 1947, ch. 1366, § 4, p. 2916), but this amendment did not become effective until September 19, 1947, three days after the notice of rejection was served. In reference to the issue before us, the change effected by the amendment is in form and not in substance. The result would not be affected by the amendment.

*Personnel Board,* 96 Cal.App.2d 423 [215 P.2d 512], it was held that a notice of rejection which gave as the "reasons" for the rejection "the good of the service and failure to demonstrate merit and fitness," and which charged the probationary employee with "actions unbecoming an employee" was insufficient as a matter of law. In *Brown* v. *State Personnel Board,* 43 Cal.App.2d 70 [110 P.2d 497], the reason given in the notice of rejection was "services unsatisfactory," and this was held to be insufficient. These are the cases relied upon by appellant to support his contention that the notice of rejection was insufficient as a matter of law. The notice of rejection here involved carefully complies with the requirements of the section. It charges that appellant shirks his fair share of duties, sleeps while on duty, fails to keep appointments, fails to obey orders and instructions, fails to cooperate with the forest service, creates dissension among the other employees, and shows no interest in his job. If the notice contained no more than this it might be insufficient under the rule of the Bryant and Brown cases, *supra.* But unlike those cases each charge is supported with detailed allegations setting forth places, names and dates. A reading of the notice demonstrates that it complies in all respects with the requirements of section 19173 of the Government Code.

The evidence supports most of the charges. ▮ In considering this evidence it must be remembered that appellant is a probationary employee. In such cases the action of the appointing power in dismissing the employee must be upheld if the charges are supported by substantial evidence. (*Boutwell* v. *State Board of Equalization,* 94 Cal.App.2d 945 [212 P.2d 20].) Moreover, the purpose of a probationary appointment, and the rights of the employee, are far different from those of a permanent employee. In *Wiles* v. *State Personnel Board,* 19 Cal.2d 344, 347 [121 P.2d 673], the purpose of a probationary period for employees was stated as follows : "The object and purpose of a probationary period is to supplement the work of the civil service examiners in passing on the qualifications and eligibility of the probationer. During such period the appointive power is given the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then he may be discharged by the summary method provided for in the Civil Service Act before he acquires permanent civil service status. (See *Neuwald* v.

*Brock,* 12 Cal.2d 662, 670 [86 P.2d 1047] ; Note : 131 A.L.R. 383.) '' In the Boutwell case, *supra,* the same thought is expressed as follows (p. 949) :

"In making the determination whether the probationer has exhibited during his probation the proper qualifications to become a permanent civil service employee the employer under whose direction and observation he is working is in the best position to form a conclusion. As said by the court in *Broyles* v. *State Personnel Board,* 42 Cal.App.2d 303, 307 [108 P.2d 714] :

" 'The appointing power must necessarily be allowed to exercise discretion and personal judgment in determining whether a probationary employee shall acquire permanent status.' ''

Tested by these standards the evidence supports the charges made in the notice of rejection and dismissal. The record shows that appellant was assigned on July 18, 1947, to work under Hecker, Captain of Patrol. The captain testified that on the evening of August 29, 1947, he was on patrol with appellant; that after observing generally the lake area to be patrolled the two sat in an automobile and Hecker told appellant to listen for motors and shots and to look for spotlights ; that the two sat down in the car at 8 :05 p. m., and at 8 :15 p. m. appellant was asleep; that he slept until 10 :05 when Hecker awakened him by slamming the door of the car ; that in five minutes appellant was again asleep and slept until 10 :45 when Hecker started to drive away; that from 8 :05 until 10 :45 appellant did not speak one word. Philbrick, another warden who worked with appellant, also testified that appellant went to sleep on patrol. He gave specific dates—August 3d, August 9th and August 6th—when appellant went to sleep, and testified that he objected to working with appellant because he went to sleep on the job, and showed no interest in his job. Lantis, another warden, testified that on August 17, 1947, appellant went to sleep while on patrol, as he did also on August 22d and again on August 25th. He, too, objected to working with appellant because of his sleeping tendencies, and because petitioner did not do his share of work in an emergency.

There was much evidence that appellant failed to keep appointments with his superior officers and associates. Hecker testified that he had instructed appellant to meet him at Hecker's house on July 20, 1947, at 10 a. m., and that appellant did not arrive until 1 p. m., stating that he had been out riding

with a real estate agent; that appellant did not telephone about being delayed; that on August 13, 1947, Hecker instructed appellant to report at Hecker's house at 10 a. m. on the following day, but appellant did not arrive until 7 p. m., stating that he had been patrolling over toward Santa Margarita, although he had been instructed to patrol in another area. Hecker testified that he could only remember two occasions when appellant had been on time. He further testified that on August 3d he instructed appellant to come to Hecker's house the next morning to get some tools so that certain springs could be dug out; that Dona never did arrive, and at 9:30 p. m. that night Hecker delivered the tools to appellant's house. Appellant told Hecker that he had been horseback riding with his wife that day. Philbrick also testified that appellant was late for appointments, and gave one specific instance—August 5th—when appellant was late.

Another incident appearing in the evidence revolves around appellant's shooting a deer in an area closed to the public by the United States Forest Service, the area being in a national forest. State wardens were supposed to cooperate with the forest service and to keep members of the public out of closed areas. The area in question was a mile and a half behind a closed gate to which appellant had a key, it being the duty of state wardens to patrol the area. On August 27th he shot a buck in the closed area. While the killing of the deer was not illegal under state law, it was the duty of state wardens to warn hunters not to enter areas closed to recreational use by the forest service, and it was a violation of the national forest service policy. Wardens also had been instructed by a circular letter mailed to each warden to deposit at the ranger's station duplicate deer tags for animals killed in a national forest. It was also against the policy of the Fish and Game Commission for wardens to validate their own deer tags. Appellant violated all of these regulations, and, in addition, lied to his superior officer about doing so. He not only killed the deer in the closed area, thus failing to cooperate with the forest service, but he failed to deposit a duplicate tag at the ranger station, merely reporting the incident to that station. When he told Hecker about killing the deer he told him that he had deposited the duplicate tag at the forest service station, and that a ranger there had validated the tag. When Hecker inquired at the ranger station he discovered that no duplicate tag had been deposited there. Appellant then admitted that he had not deposited the tag, but mailed it himself

to Los Angeles, and that he had also validated his own tag. This self-validation is legal, but a violation of the policy of the Fish and Game Commission. As a result of this incident appellant's key to the gate was taken from him and returned to the forest service.

There is considerable evidence by Hecker and others that on specified dates appellant, who had been instructed to patrol certain designated areas, in violation of instructions patrolled other areas.

Hecker also testified that on August 2d he and another warden took appellant on a patrol to acquaint him with the country, conditions and the people in the area. On this trip Hecker tried to point out to appellant the roads in the area, where people lived, certain areas where violations were likely to occur, houses where violators lived and where people lived who would cooperate, etc. Appellant made no replies to any of this, took no notes, asked no questions and seemed totally disinterested in the whole trip.

There is other evidence of incidents not necessary to set forth in detail. Appellant offered an explanation of some of the incidents. He testified that, as the result of an automobile accident, he had difficulty in sleeping. Moreover, because he had to live in a trailer park where it was crowded and noisy, he had difficulty sleeping at nights. He stated, and corroborated his statement with his work sheet made out by himself, that the day prior to one of the sleeping incidents he had been on patrol for 19 hours. While he admitted some of the sleeping incidents, he positively denied others. He tried to explain being late for appointments by the statement that he had difficulty finding a place to live and spent much time looking for a house, and with the claim that the instructions were indefinite. He denied knowledge of the circular letter containing the statements about shooting in a closed area, although the circular was sent to all wardens. He gave various explanations as to why he was frequently outside of his patrol area, and denied that Hecker had told him to confine his patrolling to designated areas.

These conflicts were for the trier of the facts. It is obvious that the hearing officer and the trial court did not believe all of the explanations offered by appellant. On several basic matters the evidence was conflicting. These conflicts must be resolved against appellant. While much of the evidence relates to small and unimportant acts, it must be remembered that we are here dealing with the rejection of a probationary employee,

and not of a permanent employee. In such cases the appointing power has much more control and discretion than it possesses over permanent employees. ▮ Sufficient evidence was introduced to show that appellant slept on the job, did not get along with his fellow employees, did not cooperate with the forest service, lied to his superior officer and did not take a great interest in his job. Within the language of section 19173 of the Government Code the appointing power, the Personnel Board and the trial court were justified in finding that appellant did not demonstrate ''merit, efficiency, fitness, and moral responsibility'' and were justified in concluding that he should be rejected because of ''the good of the service.''

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.