[No. B042204. Second Dist., Div. Three. Nov. 19, 1990.]

ALBERTA L. BELL, Plaintiff and Appellant, v.
CITY OF TORRANCE et al., Defendants and Respondents.

**COUNSEL**

Green & Shinee and Helen L. Schwab for Plaintiff and Appellant.

Liebert, Cassidy & Frierson, Linda Jenson and Katrina L. Abel for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Alberta L. Bell (Bell) appeals a judgment denying her petition for writ of mandate (Code Civ. Proc., § 1085) wherein she sought reinstatement as a permanent employee of defendant and respondent City of Torrance (the City).

The essential issue presented is whether Bell was a probationary employee at the time the City terminated her employment, so as to entitle the City to terminate her without according her any administrative review.

Because we conclude Bell was terminated within the probationary period as extended by her extensive absence, and received proper notice of the rejection of her probation, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 1986, Bell commenced her employment as a clerk typist with the City and was assigned to the police department's records division.

Pursuant to section 8.2 of the memorandum of understanding (MOU)[1] between the City and the Torrance City Employees Association (TCEA), the appointment was subject to a probationary period of one year's duration.[2]

In April 1987, Bell requested and received authorization for an extensive, unpaid leave of absence for medical reasons. The leave of absence extended from April 14, 1987, through June 30, 1987. Bell returned to work on July 1, 1987. Thereafter, she was advised her probationary period was being extended. Due to Bell's 78-day absence, the City extended the end of her 1-year probationary period by 78 days, from August 11, 1987, to October 27, 1987.

Bell's position required a rotation of shifts, including a graveyard shift. Following her return, Bell presented a note from her physician, who recommended that Bell be allowed to work only daytime shifts "for fear of creating undue stress and fatigue that will aggravate the preexisting problems." The records division accommodated Bell by continuing to assign her to the day shift. On October 23, 1987, Bell was informed she was being terminated that day for failure to complete satisfactorily her probationary period. An exit interview was conducted on Monday, October 26, 1987, and Bell completed status change forms regarding her termination.

Because the City viewed Bell as a probationary employee at the time of termination, it denied her request for a hearing before the civil service commission regarding her rejection.[3]

On April 19, 1988, Bell filed a petition for peremptory writ of mandate, seeking reinstatement and backpay.[4] Bell alleged she successfully had completed her one year probationary period on August 11, 1987, at which time she became a permanent City employee, and the City unlawfully had extended her probationary period.

---

[1] All further section references are to the MOU unless otherwise specified.

[2] We have taken judicial notice of the MOU and the Torrance Municipal Code. (Evid. Code., §§ 452, 459.)

[3] Torrance Municipal Code section 14.47.8 provides any employee who has been discharged, may, within 10 days, file a written request with the civil service commission for a review of such discharge. However, a probationary City employee is without such right of review. Section 14.20.3 of the Torrance Municipal Code provides a probationary employee may be terminated at any time during the probationary period without the right of appeal.

[4] Code of Civil Procedure section 1085 states a writ of mandate "may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

The City contended it properly had extended Bell's year of probation by the length of her medical leave of absence, and as a probationary employee, Bell could be terminated without cause and without due process.

The matter was heard March 22, 1989. The trial court denied the petition on the grounds stated by the City. It held Bell was a probationary employee, she had no *Skelly* rights,[5] and the City had substantially complied with Torrance Municipal Code section 14.20.3. Bell appealed.

## CONTENTIONS

Bell contends: (1) she was a permanent employee as of the date of her termination; (2) even assuming the City substantially complied with its own rules, such compliance was legally insufficient because the rules governing Bell's employment required strict compliance; (3) the City acted unlawfully in attempting to extend her probationary period; and (4) she was denied procedural due process.

## DISCUSSION

1. *Termination occurred within probationary period because leave of absence extended anniversary date.*

The essential issue is whether Bell had probationary employee status at the time she was discharged. Bell contends she completed probation on August 11, 1987, the anniversary date of her August 11, 1986, commencement of employment, and that no authority supports an extension of probation. The City maintains it properly extended Bell's probationary period due to her prolonged 78-day leave of absence.

We conclude that viewing the provisions of the MOU as a whole, and appreciating the purpose of probation, an interruption of service caused by a leave of absence longer than 10 days requires an extension of the probationary period.

a. *Analysis of pertinent provisions.*

The MOU, an agreement between the City and the TCEA, is a contract which "should be interpreted to execute the mutual intent and

---

[5] *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

purpose of the parties. [Fn. omitted.]" (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 339 [124 Cal.Rptr. 513, 540 P.2d 609].) The whole of a contract must be considered so as to give effect to every part. (Civ. Code, § 1641.) Further, "[a] city's [MOU] must be harmonized with its ordinances and charter provisions . . . ." (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1146 [209 Cal.Rptr. 890], disapproved on other grounds in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426, 764 P.2d 278].) Mindful of these principles, we examine the pertinent provisions.

Section 8.2, entitled "PROBATIONARY PERIOD," provides: "There shall be a 1 year probationary period for original non-promotional appointments to all classifications covered by this Agreement."

■ Bell argues the City has no *written* provision which allowed it to extend this one year probationary period until such time as a probationer has completed one year of actual service. The City submits it is apparent by looking at the MOU as a whole that the probationary period requires a probationer to *serve* one year. Specifically, the City invokes in support of its interpretation sections 8.1 and 2.2, which speak in terms of length of service rather than simply in terms of chronological time.

Section 8.1, entitled "CONTINUITY OF SERVICE," deducts unpaid leaves of absence in excess of 10 days from an employee's "total service." It states: "Service requirements for advancement within the pay range, longevity pay, industrial accident leave, long term disability, holidays and vacation shall be based on continuous and total service as a regular employee. [¶] (a) Leaves of absence without pay of 10 working days or less and leaves with pay shall not interrupt continuous service not[6] be deducted from total service. [¶] (b) Leaves of absence without pay, those days in excess of 10 working days, except for extended military leave, shall be deducted in computing total service but shall not serve to interrupt continuous service. [¶] (c) All unauthorized absences without leave . . . shall be deducted from total service and may . . . interrupt continuity of service or be grounds for discharge." (Italics added.)

While the probationary period is not specifically mentioned in section 8.1, the deduction of unpaid leaves of absence in excess of 10 working days for computation of "total service" for other important work benefits is logically persuasive.

---

[6] "Not" presumably should read "nor."

The City's position that one year of *service* is required as a probationary employee finds further support in section 2.2, which provides: "(c) Step Advancement [¶] Salary step advancement within a pay range shall be on the first day of the nearest pay period to the anniversary of each *year of service* within a class, . . ." (Italics added.)

The *function* of the probationary period is disclosed in Torrance Municipal Code section 14.20.2, entitled "OBJECTIVES OF PROBATIONARY PERIOD," which provides: "The probationary period shall be regarded as an extrinsic part of the examination process and shall be utilized for closely observing the employee's work, for securing the most effective adjustment of a new employee to his position, and for eliminating any probationary employee whose performance does not meet the required standards of work. A minimum of *six (6) performance evaluations* of such employee shall be filed with the Civil Service Commission *at equal intervals* during the probationary period." (Italics added.)

b. *Conclusion.*

Thus, the probationary period enables the City to observe a probationer's job performance and to evaluate periodically that performance. If, as Bell maintains, the probationary period has nothing to do with actual service but simply requires an employee to occupy a position for 12 consecutive calendar months, a probationer could take a leave of absence for the better part of a year, not be available for observation or evaluation, and still attain permanent employee status.

Such a narrow interpretation of the one-year probationary period is at odds with related provisions of the MOU and Torrance Municipal Code section 14.20.2, which requires repeated performance evaluations at regular intervals throughout the year. We conclude completion of probation necessarily entails completion of *one year of service*, not merely the expiration of one chronological year. Bell's 78-day leave of absence therefore extended her anniversary date accordingly.[7, 8]

---

[7] Bell does not contend section 8.1, subdivision (b), requires her anniversary date to be extended only by "those days in excess of 10 working days," or 2 weeks, which in Bell's case would amount to an extension of about 64 days. Bell merely argues the City was without authority to extend her probationary period beyond August 11, 1987.

[8] The clerk's transcript includes a declaration by Elaine Winer, the City's personnel director, proffered by the City. Bell objected thereto. It is unclear how the trial court ruled on Bell's objections because the minute order merely states: "Only competent evidence is consid-

## 2. *City substantially complied with termination notice requirements.*

Bell contends she did not receive *written* notice of her termination as required by Torrance Municipal Code section 14.20.3.[9] Bell concedes a probationer who is not fitted to discharge the duties of the position may be discharged summarily, absent acquisition of permanent status, and with or without cause. (*Wiles* v. *State Personnel Board* (1942) 19 Cal.2d 344, 347 [121 P.2d 673].) Bell asserts, however, it is also well settled a civil service probationer is entitled to have the statutory and administrative procedures for dismissal strictly followed, and if, in an attempt to discharge a probationary employee, applicable procedures are not strictly followed, the discharge is invalid and the employee is subject to immediate reinstatement. (*Wiles, supra*, 19 Cal.2d at p. 351 [121 P.2d 673]; *Nilsson* v. *State Personnel Board* (1938) 25 Cal.App.2d 699, 705 [78 P.2d 467]; *Kelly* v. *State Personnel Board* (1939) 31 Cal.App.2d 443, 449 [88 P.2d 264]; *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 74-75 [110 P.2d 497]; *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 71-72 [87 Cal.Rptr. 731]; *Santillano* v. *State Personnel Bd.* (1981) 117 Cal.App.3d 620, 623 [173 Cal.Rptr. 1].)

Bell's argument is unavailing.

█ The rule of strict compliance requires a probationer be rejected *within* the probationary period, as the mere intent to dismiss is insufficient, and the notice of rejection served within the probationary period must state

---

ered." However, at oral argument, counsel for both sides discussed the content of Winer's declaration and we therefore regard the declaration as being part of the record.

According to Winer, who had served as personnel director for over 10 years, during that period it had been the practice of the City to extend the probationary period of employees who had been absent on leave. The length of the extension was determined by the length of the leave. Half a dozen probationers had had their probationary period so extended. Neither Bell's union, the TCEA, nor the Torrance Municipal Employees, Local 1117/AFSCME, had objected to such extension on behalf of the employees they represented. "It is well settled that although an agreement may be indefinite or uncertain in its inception, the subsequent performance of the parties will be considered in determining its meaning for they are least likely to be mistaken as to the intent. [Citations.]" (*Crawford* v. *Continental Cas. Co.* (1968) 261 Cal.App.2d 98, 102 [67 Cal.Rptr. 641].) Accordingly, the past practice of the parties to the MOU provides additional support for extending Bell's probationary period until such time as she had completed one full year of service.

[9]Torrance Municipal Code section 14.20.3 provides: "REJECTION OF PROBATIONER. [¶] During the probationary period an employee may be rejected at any time by the appointing power without the right of appeal. No person shall be removed from his probationary position without prior approval of the City Manager or his designated representative. Notification of rejection in writing shall be sent to the probationer and a copy filed with the Civil Service Commission." (Italics added.)

specific reasons for the rejection. (Gov. Code, § 19173; *Wiles, supra*, 19 Cal.2d at pp. 351-352; *Santillano, supra*, 117 Cal.App.3d at p. 623.)

■ However, protections relating to *state* civil service employees proferred by Bell in support of her argument are inapplicable to Bell's employment by the City.[10] Further, the issue here under discussion is not whether Bell was fired beyond the probationary period but merely whether she received adequate notice of the timely rejection of her probation.

Bell concedes she received *actual* notice. Her declaration states on October 23, 1987, her supervisor informed her that she was not to report to work the following day or any date thereafter because she had not passed her probationary period and was being terminated. In addition, on October 28, 1987, Bell completed a form terminating her membership in the public employees retirement system based on her separation of employment. Further, the civil service commission's denial of Bell's request for a hearing discloses it was aware of the rejection of her probation.

Because Torrance Municipal Code section 14.20.3, unlike the Government Code provisions pertaining to *state* civil service, does not require a written statement of *reasons* and does not give the employee a right to file an appeal within a certain time, the trial court properly held the City's substantial compliance with the notice requirements of the section was sufficient.

---

[10] Government Code section 19173, which applies to state civil service employees, provides: "Any probationer may be rejected by the appointing power during the probationary period for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility, but he or she shall not be rejected for any cause constituting prohibited discrimination as set forth in Sections 19700 to 19703, inclusive. [¶] A rejection during probationary period is effected by the service upon the probationer of a written notice of rejection which shall include: (a) an effective date for the rejection which shall not be later than the last day of the probationary period; and (b) a statement of the reasons for the rejection. Service of the notice shall be made prior to the effective date of the rejection, as defined by board rule for service of notices of adverse actions. Notice of rejection shall be served prior to the conclusion of the prescribed probationary period. The probationary period may be extended when necessary to provide the full notice period required by board rule. Within 15 days after the effective date of the rejection, a copy thereof shall be filed with the Board." (Italics added.)

In addition, Government Code section 19175 affords a remedy for a rejected state civil service probationer. It provides: "The board at the written request of a rejected probationer, filed within 15 calendar days of the effective date of rejection, may investigate with or without a hearing the reasons for rejection. After investigation, the board may do any of the following: [¶] (a) Affirm the action of the appointing power. [¶] (b) Modify the action of the appointing power. [¶] (c) Restore the name of the rejected probationer to the employment list . . . . [¶] (d) Restore him or her to the position from which he or she was rejected, . . ."

## DISPOSITION

The judgment is affirmed. Each party to bear respective costs on appeal.

Croskey, J., and Hinz, J., concurred.