[Civ. No. 48763. First Dist., Div. One. Mar. 12, 1981.]

LINDA SANTILLANO, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DAVID E. LOBERG, as Director, etc., Real Party in Interest and
Respondent.

COUNSEL

Philip E. Callis for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Eleanor Nisperos, Deputy Attorney General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

OPINION

**THE COURT.**\*—Linda Santillano was discharged from employment as a psychiatric technician at Napa State Hospital, ostensibly by "rejection during probationary period" (Gov. Code, § 19173). Respondent State Personnel Board (the Board) affirmed the dismissal; Santillano's petition for a writ of mandate (Code Civ. Proc., § 1094.5) was denied by the trial court. Santillano appeals to this court, contending that she had attained permanent status before she was discharged and therefore that the hospital's purported "notice of rejection during probationary period" was invalid and she is entitled to reinstatement. We agree; therefore we reverse the judgment of the trial court with instructions to issue the writ.

Santillano was appointed as a psychiatric technician as of August 15, 1977, subject to a six-month probationary period which, but for subsequent events, would have ended on February 14, 1978. A tragedy in her family caused Santillano to be off work between October 16 and November 28. On or about December 19 Santillano received a "notice of personnel action/report of miscellaneous change" which recited that "You have a break in service. The 11/77 pay period is not qualifying for state service purposes. You lose credit for the pay period for seniority, higher vacation credit, merit salary increase, sick leave and vacation credits, and service awards." On or about January 19 she received, but

---

*Before Rancanelli, P. J., Newsom, J., and Grodin, J.

refused to sign, a "report of performance for probationary employee" which contained unfavorable ratings and on which, in a block marked "date probation ends," the date "2-14-78" had been marked out and the date "3-14-78" typed in. A personnel officer testified that Santillano had been informed of the purported extension of her probationary period to March 14 when she returned to work on November 28, but Santillano denied this; the personnel officer had not been present during any such discussion. Santillano's 105th working day in the period commencing August 15, 1977, was March 4, 1978. On March 14, 1978, the hospital served a "notice of rejection during probationary period" on Santillano, to be effective the same day.

Santillano contends that her probationary period ended, and she became a permanent employee, on March 4; the Board responds that Santillano's probationary period was properly extended to March 14. ■ The parties agree as to basic principles: "A civil service probationer is entitled to have the statutory procedure for dismissal strictly followed." (*Wiles* v. *State Personnel Board* (1942) 19 Cal.2d 344, 351 [121 P.2d 673]; *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 75 [110 P.2d 497].) Among other things the requisite written notice of rejection must be made effective not "later than the last day of the probationary period" and must be served on or before its effective date. (Gov. Code, § 19173; cf. *Wiles* v. *State Personnel Board, supra*, 19 Cal.2d 344, 351.) If these time limits are not met, no rejection is effected. (*Wiles* v. *State Personnel Board, supra*, 19 Cal.2d 344, 352.) If, as Santillano contends, she became a permanent employee on March 4, she was thereafter subject to discharge only by considerably more elaborate procedures (Gov. Code, § 19570 et seq.) which were not followed in her case: She would be entitled to reinstatement with back pay subject to setoffs. (Cf. Gov. Code, § 19180.) The relevant facts are essentially uncontradicted; the issue must be resolved by construction of the applicable statutes and regulations, a question of law which requires that we "'ascertain the intent of the...[lawmakers] so as to effectuate the purpose of the law,'" by recourse in the first instance "'"to the usual, ordinary import of the language employed in framing"'" the statutes and regulations. (*Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7-8 [143 Cal.Rptr. 430].)

■ The statute applicable to a determination of the last day of Santillano's probationary period is Government Code section 19170, which provides in relevant part that "The board shall establish for each class the length of the probationary period. The probationary period which

shall be served upon appointment shall be six months unless the board establishes a longer period of not more than one year. [¶] The board may provide by rule: (a) for increasing the length of individual probationary periods by adding thereto periods of time during which an employee while serving as a probationer is absent from his position. . . ." The only published rule which has been adopted by the Board with specific reference to section 19170 provides in relevant part that (subject to special rules as to which there is no dispute) "In the event a probationer has not during a prescribed probationary period worked the number of days set forth below probation will automatically be extended until the probationer has worked the required number of days: [¶] (1) 105 if serving a six months' probationary period. . . ." (Cal. Admin. Code, tit. 2, § 321, subd. (a).)

The parties appear to agree that the purpose of section 19170 and of rule 321 is to give the appointive power an adequate "opportunity to observe the conduct and capacity of the probationer." (See *Wiles* v. *State Personnel Board, supra*, 19 Cal.2d at p. 347.) They also agree that section 19170 refers to 6 calendar months (cf. Gov. Code, § 18538.1 and Cal. Admin. Code, tit. 2, § 6.1) and that rule 321 operates to effect an automatic extension if the probationer has not worked 105 days by the end of 6 calendar months. They disagree as to how the end of six calendar months is to be identified.

The Board takes the position that section 19170 requires that a probationer be observed on the job during each of six calendar months of work, and that for this purpose a calendar month is to be defined as a month in pay status under the Board's rule 6.2 (Cal. Admin. Code, tit. 2, § 6.2). Since November was disqualified as a pay period under rule 6.2, the Board argues, Santillano was properly required to complete another month in pay status during her probationary period, with the result that the end of six calendar months did not occur until March 14. By March 14 Santillano had worked 113 days; therefore, the Board concludes, rule 321 did not apply.

The Board's argument is unpersuasive. By their own terms the pay period provisions of rule 6.2 are made to apply specifically to statutes and regulations which relate to sick leave, educational leave, vacations, layoffs, recognition of length of service and promotions. Nothing in section 19170 or in rule 6.2 supports the Board's contention that "six months" in section 19170 means six months in pay status. We agree with Santillano's interpretation of the law as applied to her situation:

Section 19170 represents a legislative decision to delegate to the Board specific implementation of the policy that the appointing authority should have an adequate period in which to observe the probationary employee. The plain meaning of section 19170, as applied to Santillano's situation, is that Santillano was to be on probation for a period of six consecutive calendar months, or until February 14, 1978, subject to extension only as provided by Board rule. The Board had announced, in rule 321, its determination that in a situation such as Santillano's 105 working days would provide an adequate period of observation. By force of section 19170, the probationary period could not be *less* than 6 months (cf. *Broyles* v. *State Personnel Board* (1941) 42 Cal.App.2d 303, 307 [108 P.2d 714]), but if within the 6-month period Santillano had not worked 105 days then by force of rule 321 her probationary period would be extended until she *had* worked 105 days. On February 14 Santillano had not yet worked 105 days; accordingly her probationary period was automatically extended until she should have worked 105 days, which occurred on March 4. It follows that Santillano had become a permanent employee by the time the hospital purported (on Mar. 14) to reject her during her probationary period.

We should point out that different procedures would have applied had Santillano's leave in October and November amounted to "an extended period of absence." (Gov. Code, § 19170.) Under the Board's own rule it did not. (Cal. Admin. Code, tit. 2, § 321, subd. (b).)

The Board makes various arguments against the result we reach; we reject each of them. Legislative delegation of power to implement the purpose of providing an adequate evaluation period was proper (cf. *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 376 [71 Cal.Rptr. 687, 445 P.2d 303]) and the Board's determination that a probationer should be required to work at least 6 consecutive months but not less than 105 days was reasonable. Our interpretation is supported by the Board's own practices as reflected in its "Personnel Transactions Manual," pertinent parts of which were received in evidence; even were the Board's day-to-day construction of section 19170 to be otherwise, we would not be bound by a construction which was clearly wrong. (Cf. *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405].) *Broyles* v. *State Personnel Board, supra*, 42 Cal. App.2d 303 simply affirms Santillano's well-documented conclusion that a 6-month probationary period will continue until the end of 6 calendar months or until the employee has accumulated 105 working days,

whichever *last* occurs. The Board's contention that the hospital was simply acting for Santillano's own good is irrelevant under the applicable statute and rule. Nor is it relevant that Santillano received notice (if she did) that the hospital purported to make an unauthorized extension of her probationary period; contrary to the hearing officer's finding, there is no substantial evidence that Santillano agreed to such an extension.

The judgment is reversed. The trial court is directed to issue a peremptory writ of mandate ordering the Board to set aside its decision and to restore Santillano to the position she held on March 14, 1978, with payment of back salary as provided in Government Code section 19180. Santillano shall recover her costs of suit in the trial court and her costs on this appeal.