Filed 7/10/15

<u>**CERTIFIED FOR PUBLICATION**</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | F069100 |
| Plaintiff and Respondent, | (Super. Ct. No. 12CECG01622) |
| v. | |
| CALIFORNIA STATE PERSONNEL BOARD, | |
| Defendant and Respondent; | **OPINION** |
| JOSEPH McCAULEY, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County. Debra J. Kazanjian, Judge.

Law Office of Michael A. Morguess and Michael A. Morguess for Real Party in Interest and Appellant.

Stephen A. Jennings, Clayton A. Mack and Christopher D. Howard, Staff Counsel, Department of Corrections and Rehabilitation Office of Legal Affairs, for Plaintiff and Respondent.

No appearance for Respondent California State Personnel Board.

-ooOoo-

Appellant Joseph McCauley (McCauley) was promoted to the position of Correctional Sergeant at Avenal State Prison by his employer, the California Department of Corrections and Rehabilitation (CDCR). The new position began on December 2, 2008, and was subject to a 12-month probationary period before it became permanent. On December 1, 2009, CDCR served a notice of rejection on McCauley to remove him from the position of Correctional Sergeant *effective* on December 8, 2009. On December 2, 2009, another document was served on McCauley, this one purporting to extend his probationary period until December 8, 2009. McCauley maintained that CDCR's notice of rejection and other papers were invalid due to failure to comply with certain timing and notice requirements relating directly to the duration of the probationary period. In an administrative appeal to the California State Personnel Board (the Board), the Board agreed with McCauley and revoked CDCR's notice of rejection. CDCR challenged the Board's ruling by filing a petition for writ of mandate in the trial court. The trial court granted the petition and reversed the Board. McCauley now appeals from the judgment granting the petition for writ of mandate.

We hold that McCauley is correct that the notice of rejection was fatally deficient under applicable law because the effective date of the rejection (i.e., Dec. 8, 2009) was *after* the completion of his probationary period. In so holding, we also conclude that the proper way to calculate a civil service probationary period is to *include* the first day, notwithstanding the general rule for calculating time limits in Government Code section 6800[1] and Code of Civil Procedure section 12. Here, then, the first day of McCauley's probationary period was December 2, 2008, and the last day was December 1, 2009. Thus, CDCR's effort on December 2, 2009, to extend the probationary period was too late, no extension was accomplished thereby, and the effective date of the rejection was not within the probationary period as required. For all of these reasons, we

---

[1]     Unless otherwise indicated, all further statutory references are to the Government Code.

reverse the trial court's judgment and direct the trial court to enter a new order denying the petition for writ of mandate.

## FACTS AND PROCEDURAL HISTORY

McCauley was employed by CDCR as a correctional officer starting in 2003. In mid-2008, he was given a temporary term promotion to Correctional Sergeant. In late 2008, he was appointed to the permanent position of Correctional Sergeant at Avenal State Prison beginning on December 2, 2008, and subject to a probationary period of 12 months. The position would become permanent only after the successful completion of the probationary period.

On December 1, 2009, CDCR served a "NOTICE OF REJECTION DURING PROBATIONARY PERIOD" (notice of rejection) and attached documents on McCauley by mail. The notice of rejection stated, among other things, that "pursuant to … Section 19173," McCauley was being "rejected" from his "position of Correctional Sergeant with [CDCR] at Avenal State Prison." It also stated that "[t]his rejection … shall be *effective at the close of business on December 8, 2009*." (Italics added.) The notice of rejection articulated numerous grounds for the rejection decision by CDCR, including McCauley's failure to meet certain standards expected of persons serving as a Correctional Sergeant and supervisor.[2] Although the rejection was said to be effective on December 8, 2009, no provision was made in the notice of rejection to extend McCauley's probationary period. A proof of service listed the documents that were attached to the notice of rejection, but that list did not include a written notification that CDCR was extending McCauley's probationary period.

On December 2, 2009, McCauley was personally served with a second copy of the notice of rejection and attached documents. The papers personally served on

---

[2] One week after CDCR's notice of rejection, CDCR informed McCauley that as a result of being rejected from the position of Correctional Sergeant, he would be returning to his former position as a regular correctional officer.

December 2, 2009, *also* included a letter (dated "December 1, 2009") signed by Employee Relations Officer Kimberly Thornton, informing McCauley that "'[p]ursuant to Government Code Section 19173 and California Code of Regulations … Section 321 [his] probationary period [was] being extended to December 8, 2009 .…'" The fact that this letter was served on December 2, 2009, is highly significant in this case because CDCR's notice extending the probationary period had to be given "[p]rior to the completion of the probationary period .…" (Cal. Code Regs., tit. 2, § 321, subd. (e).) According to McCauley, the last day of the 12-month probationary period was December 1, 2009, and, therefore, the letter attempting to extend the probationary period was served one day too late and had no effect. That is, by December 2, 2009, the probationary period was already over and, from McCauley's perspective, he "woke up that morning (the 366th day) as a permanent correctional sergeant."

McCauley filed an administrative appeal to the Board, claiming that the notice of rejection was not timely or effective under the circumstances. An Administrative Law Judge (ALJ) was assigned to hear the matter. McCauley submitted a motion to the ALJ to revoke the notice of rejection. In that motion, McCauley argued the notice of rejection was invalid because the written notice of rejection must set forth an "effective date" for the rejection that "shall not be later than the last day of the probationary period." (See § 19173, subd. (b).) The notice of rejection also had to comply with California Code of Regulations, title 2, section 52.6, subdivision (a), which provides that such notice "shall" be given "[a]t least five working days before the effective date of [the] proposed action .…" McCauley further argued that no extension of the 12-month probationary period was accomplished by CDCR because notice thereof was not given "[p]rior to the completion of the probationary period .…" (Cal. Code Regs., tit. 2, § 321, subd. (e).) According to McCauley's motion, since the probationary period was not extended, the effective date of the rejection (i.e., Dec. 8, 2009) was well after the final day of the probationary period on December 1, 2009.

4.

On January 26, 2012, the ALJ issued a written decision. The ALJ agreed with McCauley that the 12-month probationary period ended on December 1, 2009. The ALJ also found that CDCR's letter purporting to extend the probationary period was not served until December 2, 2009, one day after the probationary period had already ended. The ALJ concluded: "Due to [CDCR's] failure to meet the requirements of California Code of Regulations, title 2, section 321, [McCauley's] probationary period ended December 1, 2009, and therefore the [notice of rejection] is revoked as being untimely."

On February 7, 2012, the Board adopted the ALJ's decision as its own, including the findings of fact, determination of issues, and the decision to revoke CDCR's notice of rejection.

On May 15, 2012, CDCR filed its petition for writ of mandate in the trial court. In support of its petition, CDCR argued for the first time that the probationary period actually ended on December 2, 2009, not on December 1, 2009, based on generally applicable statutes providing a method of computing time (i.e., Gov. Code, § 6800 & Code Civ. Proc., § 12), under which method the first day of the period would be excluded. The trial court agreed with CDCR's position and, on November 15, 2013, the court granted the writ of mandate and directed the Board to set aside its decision revoking the notice of rejection. Notice of entry of the trial court's judgment was served and filed on January 30, 2014.

McCauley's timely notice of appeal followed.

## DISCUSSION

### I. Standard of Review

The scope of our review from a judgment on a petition for writ of mandate is the same as that of the trial court. (*Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270, 282.) To the extent factual questions are involved, the Board's findings of fact are reviewed under the substantial evidence test. (*Id.* at pp. 281–282; *Gonzalez v. State Personnel Bd.* (1995) 33 Cal.App.4th 422, 428; Code Civ. Proc., § 1094.5, subd. (c).) If

a question of law is presented, we undertake a de novo review of the Board's ruling (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404), including where (as here) the question involves the interpretation of statutory or regulatory provisions (*Riverside Sheriffs' Assn. v. County of Riverside* (2011) 193 Cal.App.4th 20, 28; *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349–1350).

We also recognize that courts show deference to an administrative body's reasonable construction of relevant statutory provisions within its field of expertise. As summarized by our Supreme Court: "Ultimately, the interpretation of a statute is a legal question for the courts to decide, and an administrative agency's interpretation is not binding. [Citation.] … But we have also said that when a statute is susceptible of more than one interpretation, we will consider an administrative interpretation of the statute that is reasonably contemporaneous with its adoption. [Citation.]" (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 101.) Although not necessarily controlling, "'"[c]onsistent administrative construction over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight and will not be overturned unless clearly erroneous."'" [Citations.]" (*Id.* at p. 1012; accord, *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 309; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388–1389.)

Here, however, it does not appear that the Board has addressed and determined the precise issue before us in its precedents. That is, the Board has not directly considered the legal question of whether, in light of the general rule of Government Code section 6800 and Code of Civil Procedure section 12, the first day is to be excluded in the calculation of a civil service probationary period. In the one Board precedent referenced by McCauley, the Board apparently included the first day of the probationary period, but did not provide any discussion or explanation for doing so. (See *In re Dorri* (2002) SPB Dec. No. 02-05 (*Dorri*).) In any event, the specific statutory issue before us was not raised in that case. Under the circumstances, we shall consider the Board's prior action

6.

under a respectful but nondeferential standard of review.  (See *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1639.)

## II.      Relevant Statutes and Regulations

We begin with a brief summary of the pertinent statutory and administrative provisions relating to probationary periods in the employment of state civil service employees.

Pursuant to section 19170, subdivision (a), the Board is required to establish for each class of civil service employee "the length of the probationary period."  The section further states, "[t]he probationary period that shall be served upon appointment shall be six months unless the board establishes a longer period of not more than one year." (*Ibid.*)  During the probationary period, the appointing power is required to "evaluate the work and efficiency" of a probationer.  (§ 19172.)  Section 19173, subdivision (a), provides that "[a]ny probationer may be rejected by the appointing power *during the probationary period* for reasons relating to the probationer's qualifications, the good of the service, or failure to demonstrate merit, efficiency, fitness, and moral responsibility …."  (Italics added.)

Section 19173, subdivision (b), specifies the process that must be followed by the appointing power to effectuate the employee's rejection during the probationary period. It provides, in relevant part, as follows:

> "A rejection during [the] probationary period is effected by the service upon the probationer of a written notice of rejection which shall include:  (A) *an effective date for the rejection that shall not be later than the last day of the probationary period*; and (B) a statement of the reasons for the rejection.  Service of the notice shall be made prior to the effective date of the rejection, as defined by board rule for service of notices of adverse actions.  Notice of rejection shall be served prior to the conclusion of the prescribed probationary period.  *The probationary period may be extended when necessary to provide the full notice period required by board rule ….*"  (Italics added.)

7.

California Code of Regulations, title 2, section 52.6, subdivision (a) (formerly § 52.3) sets forth the minimum notice period required by the Board. It states that "[a]t least five working days before the effective date of a proposed … rejection during the probationary period, … the appointing power … or an authorized representative of the appointing power shall give the employee written notice of the proposed action.…"

The Board's rules also implement the language of Government Code section 19173, subdivision (b), relating to extension of the probationary period. California Code of Regulations, title 2, section 321, subdivision (c), states: "The probationary period may be extended for a maximum of five working days in order to comply with notice requirements as set forth in Section 52.6 for rejection during probation." California Code of Regulations, title 2, section 321, subdivision (e), then specifies the method for accomplishing such an extension: "*Prior to the completion of the probationary period*, the appointing power shall notify the employee in writing that the probationary period is being extended under this rule and of the length of the extension.…" (Italics added.)

As concisely summarized in *Santillano v. State Personnel Bd.* (1981) 117 Cal.App.3d 620 (*Santillano*): "'A civil service probationer is entitled to have the statutory procedure for dismissal strictly followed.' [Citations.] Among other things the requisite written notice of rejection must be made effective not 'later than the last day of the probationary period' and must be served on or before its effective date. [Citations.] If these time limits are not met, no rejection is effected. [Citation.]" (*Id*. at p. 623.)

### III. Calculating the Probationary Period: First Day is *Included*

There is no dispute that McCauley commenced his 12-month probationary period on December 2, 2008. The key question before us is whether, in calculating the 12-month period, the first day is to be counted. In the present appeal, McCauley's position is that the proper method of calculating an employment probationary period is to *include* the first day of the probationary period. CDCR's position—which was adopted by the

8.

trial court—is that the first day of the probationary period must be *excluded* from the calculation under the general rule set forth in Government Code section 6800 and Code of Civil Procedure section 12, which method would make December 2, 2009, the last day of McCauley's probationary period.  As explained below, we conclude that McCauley's position is correct:  The first day *is* to be included in the calculation of the probationary period.  Therefore, the last day of McCauley's probation was, as the Board specifically found, December 1, 2009.**3**

We begin our discussion of this issue by summarizing CDCR's argument for the exclusion of the first day in calculating the 12-month period.  Government Code section 6800 and Code of Civil Procedure section 12 state as follows:  "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded."  (See Civ. Code, § 10 [same].)  This is the ordinary or general rule of computation of time.  (*Ley v. Dominguez* (1931) 212 Cal. 587, 594.)  "'Before a given case will be deemed to come under an exception to the general rule the intention must be clearly expressed that a different method of computation was provided for.'  [Citation.]"  (*Latinos Unidos de Napa v. City of Napa* (2011) 196 Cal.App.4th 1154, 1161.)  "Absent a compelling reason for a departure, this rule governs the calculation of *all* statutorily prescribed time periods.  Our Supreme Court has encouraged the use of uniform rules so that the method of computing time not be a source of doubt or confusion.  '"The gravest considerations of public order and security require that the method of computing time be definite and certain."'"  (*In re Anthony B*. (2002) 104 Cal.App.4th 677, 682.)

---

**3**      The Board found, without expressly articulating its methodology, that the last day of McCauley's 12-month probationary period was December 1, 2009.  It would seem that the Board implicitly assumed it was appropriate to count the first day.  However, the Board did not address the issue of whether the general rule for calculating time (i.e., Code Civ. Proc., § 12; Gov. Code, § 6800) applied, because that issue was not raised by CDCR until it filed its petition for writ of mandate in the trial court.

According to CDCR, nothing in the relevant statutory provisions (§§ 19170–19173) or the regulations adopted by the Board (e.g., Cal. Code Regs., tit. 2, § 321) clearly express an intention to depart from the general rule for computation of time and, therefore, the general rule must be applied—that is, the first day of the probationary period must be excluded. If one were to apply this method of calculation, the last day of McCauley's probationary period would be December 2, 2009, in which case all of the essential notices were served by CDCR on McCauley during the probationary period as required.

McCauley contends that CDCR's position is unreasonable in light of the nature of a civil service employment probationary period. We agree. As stated by our Supreme Court in *Skelly v. State Personnel Bd.* (1973) 15 Cal.3d 194 (*Skelly*), with reference to the language of section 19170, "[t]he 'probationary period' is *the initial period of employment* and generally lasts for six months unless the Board establishes a longer period not exceeding one year." (*Skelly*, *supra*, at p. 197, fn. 3, italics added.) Since the probationary period is identified with the initial period of employment in the appointed position,[4] it logically follows that the first day on which the subject employment commences or takes effect is *also* the first day of the probationary period. (See § 19170, subd. (a) [the "probationary period [is] … served upon appointment"].) This direct correlation to the employment itself is a strong indicator that the Legislature intended to include the first day thereof in the calculation of an employee's service of his or her probationary period. That is, just as the first day on the job is an actual day of employment, it is also an actual day served of the probationary period and should be counted as such. This basic understanding of an employment probationary period is also in keeping with the primary purpose for having such a probationary phase, which is to

---

**4** There are some occasions in which the employee is absent from the job so often the initial period will be extended. (See Cal. Code Regs., tit. 2, § 321, subds. (a), (b).) We are not dealing with that situation here.

10.

give the appointing power "the opportunity to observe the conduct and capacity of the probationer" before he or she acquires permanent civil service status. (*Wiles v. State Personnel Board* (1942) 19 Cal.2d 344, 347 (*Wiles*); see § 19172.) In practical terms, that "opportunity to observe" an employee's work conduct begins on the first day of his or her service in the appointed position. Since that is so, one would reasonably expect the first day to be counted toward the probationary period.

Further, as explained by McCauley in his opening brief, excluding the first day would lead to absurdity: "CDCR's application … doesn't make factual sense: it suggests that on December 2, 2008, the first day McCauley served probation, he didn't work or he hadn't even started his probation, or doesn't get credit for it, as if he was in some sort of pre-probationary period for one day." Along the same lines, we would add the following observation of our own: Hypothetically, if McCauley had been rejected by CDCR on December 2, 2008, the first day of his new position, that action would obviously be a rejection *during* probation. That being the case, consistency and common sense lead to the conclusion that December 2, 2008, should be counted as day one of the probationary period.

Moreover, contrary to CDCR's argument, the relevant statutory language supports the inclusion of the first day in calculating the probationary period. Section 19170, subdivision (a), states that "[t]he probationary period *that shall be served upon appointment* shall be six months unless the board establishes a longer period of not more than one year." (Italics added.) By providing that the probationary period shall be "served" by the employee "upon appointment," the statute reflects that the probationary period (1) is the initial period of employment (see *Skelly*, *supra*, 15 Cal.3d at p. 197, fn. 3 ["[t]he 'probationary period' is the initial period of employment"]) and (2) begins upon appointment or when the appointment takes effect.[5] In short, the language of the statute

---

[5] Also, since one year is defined as 365 days (see § 6803), excluding the first day arguably conflicts with the legislative mandate that the probationary period established by the Board not

11.

conveys the idea that when employment effectively commences for the subject position, the probationary period commences as well, and this correlation is such that day one of employment is day one of the probationary period for purposes of calculation. We are satisfied that section 19170 adequately reflects the Legislature's intention to include the first day of the probationary period when calculating the employee's service, and this is particularly the case in light of the fact that we are to ascribe to the statute a construction that is both reasonable and avoids absurdity. (See *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18 [a statutory provision should be given a reasonable and common sense interpretation consistent with its apparent purpose while avoiding absurdity].)

A number of prior cases generally support the conclusion we have adopted herein. Although the prior cases do not address the specific issue raised by CDCR (regarding Gov. Code, § 6800 & Code Civ. Proc., § 12), they do take a consistent approach of counting the first day of the subject appointment when computing a civil service probationary period. For example, in *Anderson*, *supra*, 103 Cal.App.3d 242, the appellant argued based on the administrative record that her employment starting date was March 15, 1976, and, therefore, her one-year probationary period concluded on March 14, 1977, with the result that a notice of rejection served on her on March 15, 1977, was not timely. The Court of Appeal rejected the appellant's argument because substantial evidence supported the Board's finding that the appellant's employment actually started on March 17, 1976, and, therefore, the notice of rejection served on March 15, 1977, was timely. In so holding, the Court of Appeal noted that on March 15, 1977, it was still "the day before" the end of her probationary period. (*Id*. at pp. 245–246.) In *Currieri v. City of Roseville* (1970) 4 Cal.App.3d 997, the Court of Appeal held

---

exceed "one year." (§ 19170, subd. (a); see *Anderson v. State Personnel Bd.* (1980) 103 Cal.App.3d 242, 245-246 (*Anderson*) [first day included in calculation, noting § 6803]; *Davis v. Thayer* (1980) 113 Cal.App.3d 892, 902 [in ordinary usage, one year is equivalent of twelve months].) We find it unnecessary to reach this argument.

12.

that two police officers who began their employment on September 1, 1966, subject to a one-year probationary period, became permanent employees on September 1, 1967. From this holding, it is clear that the last day of their probationary period was August 31, 1967. (*Id*. at pp. 999, 1001.) In *Santillano*, *supra*, 117 Cal.App.3d 620, the employee's six-month probationary period began with her appointment on August 15, 1977, and the last day of that period was February 14, 1978, subject to extension only as provided by Board rule. (*Id*. at pp. 622, 624–625.) Finally, in *Wiles*, the employee was appointed to a permanent civil service position on August 13, 1938, subject to a six-month probationary period. The probationary period began on August 13, 1938, and ended on February 12, 1939. (*Wiles*, *supra*, 19 Cal.2d at pp. 346–347, 350–352.)

In addition to the above cases, McCauley has referred us to the Board's own precedent, *Dorri*, *supra*, SPB Dec. No. 02-05. In that case, the employee was appointed to a civil service position on September 21, 1998, subject to a one-year probationary period. On September 20, 1999, he was rejected during his probationary period. The employee appealed the rejection. The appeal was subsequently resolved by a stipulated settlement agreement whereby the notice of rejection was withdrawn and the employee agreed to serve a new one-year probationary period. The new probationary period began on September 1, 1999, and concluded on August 31, 2000. As with the appellate cases highlighted above, the Board appears to have included the first day of the probationary period, but did not explain its methodology or address the issue of whether the general rule of Government Code section 6800 and Code of Civil Procedure section 12 was potentially applicable. Nevertheless, although we do not accord deference to the Board in this circumstance, we believe it is significant that the Board assumed in *Dorri*, as well as in McCauley's case below, that it was appropriate to include the first day of the probationary period in the calculation of the time period. We say this because the Board is the agency charged with establishing probationary periods and their duration under the civil service law. (§ 19170.)

Based on all of the foregoing discussion and analysis, we conclude that in calculating an employee's probationary period, the first day is to be *included* in that calculation. This means that the general rule of Government Code section 6800 and Code of Civil Procedure section 12 is not applicable to the situation of computing civil service probationary periods. As a result, the last day of McCauley's probationary period in this case was December 1, 2009.

## IV.    The Notice of Rejection Was Properly Set Aside

Because the last day of McCauley's probationary period was December 1, 2009, CDCR's written notice served on December 2, 2009 purporting to extend his probationary period was too late and of no effect. (Cal. Code Regs., tit. 2, § 321, subd. (e); *Santillano*, *supra*, 117 Cal.App.3d at p. 623 [a civil service probationer is entitled to have the statutory procedure for dismissal strictly followed].)  Furthermore, because the probationary period was not extended and the last day thereof was December 1, 2009, the effective date of the notice of rejection (i.e., Dec. 8, 2009) was after the completion of the probationary period. As a result, the notice of rejection was invalid[6] and was properly revoked by the Board. (§ 19173; see *Wiles*, *supra*, 19 Cal.2d at p. 352.)  Therefore, the trial court erred in granting the writ petition.

---

**6**      To avoid confusion in the context of our discussion of the calculation issue, we have been reluctant to label the notice of rejection as untimely. It was timely in one sense and untimely in another. The notice of rejection served on December 1, 2009, was timely *in the sense that* it was served on the last day of the probationary period. However, other provisions of law applicable to the facts of this case rendered the same notice of rejection untimely for *other* reasons. Namely: (1) the notice had to be given five working days before the effective date of the proposed action (Cal. Code Regs., tit. 2, § 52.6, subd. (a)), (2) the effective date for the rejection could not be later than the last day of the probationary period (Gov. Code, § 19173, subd. (b)), and (3) CDCR's attempt to extend the probationary period under California Code of Regulations, title 2, section 321, subdivision (c), was too late and, thus, ineffective.

## **DISPOSITION**

The judgment of the trial court is reversed, with directions to enter a new order denying the petition for writ of mandate.  Costs on appeal are awarded to McCauley.

                                         _____

                                                           KANE, J.

WE CONCUR:


_____
LEVY, ACTING P.J.


_____
POOCHIGIAN, J.