Filed 3/21/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NANCY MICHAELS, | C090196 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2018-80002910) |
| v. | |
| STATE PERSONNEL BOARD, | |
| Defendant; | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge. Affirmed.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Miguel A. Neri and Graham C. Mills, Deputy Attorneys General, for Real Party in Interest and Appellant.

Neasham & Kramer, Patricia Kramer and Chad A. Vierra for Plaintiff and Respondent.

1

Nancy Michaels worked for more than one year as a Data Processing Manager II (DPM II) before her employer, California's Public Employees' Retirement System (CalPERS), voided her appointment at the direction of the State Personnel Board (SPB). The SPB may direct a state employer to void a civil service appointment if the SPB determines that the employee lacks the minimum qualifications for the position *and* does so "within one year after the appointment." (Gov. Code, § 19257.5.)[1]  After the SPB issued a decision rejecting Michaels's appeal of the voiding of her appointment, she filed a petition for writ of mandate in superior court.  The superior court found that Michaels had served more than one year in her position and directed the SPB to vacate its decision. CalPERS appeals.

On appeal, CalPERS contends (1) because section 19257.5 does not define the date of "appointment," that term must refer to when a new hire starts working in a new position for a state employer, (2) interpreting section 18525 to refer to the dates of offer and acceptance of a employment offer "undermines California's civil-service law," (3) the trial court's definition of "appointment" date yields an "absurd result" that conflicts with the SPB's constitutional mandate to ensure uniform application of state civil service law, (4) the application of offer-and-acceptance principles derived from contract law "introduces uncertainty" into the state civil service hiring process, and (5) Michaels was not prejudiced by having her DPM II position voided.

We conclude that the trial court correctly determined that the express language of section 18525 defines the term "appointment" to refer to the dates of offer and acceptance.  As to CalPERS's contentions regarding the wisdom of using the dates of offer and acceptance for determining the start of the one-year limitations period for voiding an appointment, the arguments concern considerations of policy that should be

---

[1]     Undesignated statutory citations are to the Government Code.

2

addressed to the Legislature. As to CalPERS's prejudice argument, we conclude its two contentions lack merit. First, even if Michaels had notice of the possibility that her position would be voided, that notice did not allow CalPERS to act in an untimely manner. Second, CalPERS's assertion that Michaels cannot avail herself of the statutes governing the limitations period for voiding an appointment would render the governing statutes a mere nullity. Accordingly, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

During the administrative proceedings, Michaels asserted that Jeanette Brazil – acting on behalf of CalPERS – verbally offered the job of DPM II to Michaels on May 2, 2016, and that Michaels verbally accepted that same day. The administrative record shows that a State Exam and Certification Online System (ECOS) report that showed she was offered the job of DPM II on May 3, 2016. The report also shows that Michaels accepted the job offer on the same day. A confidential certification report for CalPERS confirms that Michaels was offered the DPM II position on May 3, 2016. Her start date was scheduled to be on May 5, 2016.

In September 2016, an unidentified CalPERS coworker complained that Michaels did not meet the minimum qualifications for the DPM II position. SPB's compliance review unit began an investigation. In October 2016, the compliance review unit contacted CalPERS regarding Michaels's appointment. CalPERS provided the compliance review unit with information about Michaels and documentation showing that CalPERS believed that Michaels met the minimum qualifications for the DPM II appointment. The compliance review unit also "reached out to [Michaels] relative to her qualifications." On May 2, 2017, the compliance review unit "notified CalPERS by phone that it had concluded [Michaels] did not meet the [minimum qualifications] and that her appointment must be voided."

On May 3, 2017, one year after Michaels was offered and accepted the DPM II position, CalPERS completed a third report of performance for probationary employee.

3

The report addressed Michaels as follows:  "Nancy - these past few months as the the [*sic*] new DPM II over the IT Technical Resources team, you managed the various units comprised in this team, including Audits, Training, Invoices and Budgets, as well as directly managing an SSMI responsible over the IT HR Team.  In working with these teams, you provided training, knowledge transfer and identified work process improvements and worked with your team to begin the process of developing and/or revising process and procedure documents.  In the upcoming months, we'll be working more together to ensure that we review our current work processes and procedural documentation to help us plan how we will implement and execute any identified business process improvement efforts.  As we grow and mature these various processes, your role and responsibility will play a key role in how we can effectively execute and organizational change management effort.  I look forward to collaborating with you on this effort *and want to congratulate you on passing your final probation as a DPM II.*"  (Italics added.)

However, the next day (on May 4, 2017) CalPERS voided Michaels's appointment in a written letter to her.  In pertinent part, the letter informed Michaels that CalPERS "initiated an investigation into your possible unlawful appointment on April 14, 2017.  You were informed in a letter dated April 14, 2017, of our preliminary conclusion that your appointment to the Data Processing Manager II (DPM II) classification on May 5, 2016, may be unlawful.  After further review of your appointment, it has been determined that the appointment was, in fact, unlawful."  The letter explained that Michaels had not achieved the requisite minimum experience to qualify for the DPM II position.  The letter noted that "there is no evidence . . . other than good faith on your part . . . ."

On June 2, 2017, Michaels timely appealed the voiding of her DPM II appointment to the SPB.  SPB denied the appeal, finding that CalPERS had timely voided the appointment and that Michaels had not met the minimum qualifications for the DPM II position.  In determining that CalPERS had acted in a timely manner, the SPB

4

stated: "CalPERS provides that [Michaels's] appointment was dated May 5, 2016. [Michaels's] State Controller's Office record, and her signed appointment papers, reflect [Michaels's] appointment date was May 5, 2016. Thus, her official appointment date was May 5, 2016. As her DPM II appointment was voided on May 4, 2017, it was voided narrowly within the one year requirement." As did CalPERS, the SPB found that Michaels had acted in good faith during the DPM II hiring process.

On June 13, 2018, Michaels filed a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, or for traditional mandate under Code of Civil Procedure section 1085. Both CalPERS and the SPB filed written opposition to the petition. The trial court heard the matter and issued an order granting writ relief. Thereafter, CalPERS timely filed a notice of appeal.

## DISCUSSION

### *Government Code Section 18525*

CalPERS argues that the one-year period for voiding a state civil service appointment should be construed to commence on the day "when a new hire starts working at a new position for a state employer." We reject the argument.

### A.

### *Principles of Review*

This case centers on the SPB's determination that CalPERS timely voided Michaels's appointment to the DPM II position. As the California Supreme Court has recognized, "administering the state civil service based on the principle that appointments and promotions are made solely on the basis of merit is the 'central function' of the State Personnel Board." (*State Personnel Bd. v. Department of Personnel Admin*. (2005) 37 Cal.4th 512, 526.) To carry out its central function, the SPB exercises adjudicatory powers. In its adjudicatory capacity, "the [SPB] acts much as a trial court would in an ordinary judicial proceeding. Thus, the [SPB] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of the [SPB] are

5

entitled to judicial deference.  The record must be viewed in a light most favorable to the decision of the [SPB] and its factual findings must be upheld if they are supported by substantial evidence." (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823.)

As always, questions of statutory interpretation are subject to the de novo standard of review.  (*Department of Corrections & Rehabilitation v. State Personnel Bd*. (2015) 238 Cal.App.4th 710, 716.)  Even so, "[w]e also recognize that courts show deference to an administrative body's reasonable construction of relevant statutory provisions within its field of expertise.  As summarized by our Supreme Court:  'Ultimately, the interpretation of a statute is a legal question for the courts to decide, and an administrative agency's interpretation is not binding.  [Citation.]  . . .  But we have also said that when a statute is susceptible of more than one interpretation, we will consider an administrative interpretation of the statute that is reasonably contemporaneous with its adoption.  [Citation.]' " (*Id.* at p. 717, quoting *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011-1012.)  When an administrative agency's statutory interpretation is not one with a long-standing and uniform history, we "consider the [SPB's] prior action under a respectful but nondeferential standard of review." (*Department of Corrections*, at p. 717.)

## B.

### *Evidence in the Record*

CalPERS asserts that appointment means the day that Michaels started working in her position as a DPM II, i.e. May 5, 2016.  Michaels responds that the date of appointment in this case was May 3, 2016, the day on which CalPERS offered in writing the position of DPM II and also the day on which she accepted that position in writing. The trial court agreed with Michaels that May 3, 2016, constituted the date of appointment based on evidence of CalPERS's offer and Michaels's acceptance of the DPM II position.  The trial court expressly found that "[s]everal documents in the

6

administrative record, including a declaration from Michaels, demonstrate:  (1) she was offered and accepted the position on May 3, 2016; and (2) her start date was May 5, 2016."

Our review of the CalPERS's appellate briefs for a recitation of the evidence in support of the trial court's factual finding shows that CalPERS wholly ignores that evidence.  Appellant CalPERS bears the burden of supplying an adequate record for our review – especially because CalPERS correctly notes that our review is the same as that of the trial court.  We review "decisions of the SPB for substantial evidence, considering ' " '*all relevant evidence in the administrative record* including evidence that fairly detracts from the evidence supporting the agency's decision.' " ' " (*Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270, 281, italics added, quoting *California Youth Auth. v. State Personnel Bd*. (2002) 104 Cal.App.4th 575, 585.)  Here, CalPERS neither transmitted to this court nor cites the administrative record even though the trial court expressly relied on it in finding the evidence supported Michaels's claims.  However, " '[i]t is the duty of an appellant to provide an adequate record to the court establishing error.  Failure to provide an adequate record on an issue requires that the issue be resolved against appellant.' "[2] (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc*. (2012) 203 Cal.App.4th 336, 348, quoting *Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660.)

CalPERS also does not set forth a recitation of facts that cites the evidence on which the trial court relied in crediting Michaels's claim.  Instead, CalPERS's opening and reply briefs offer citations to the record only where the trial court made its decision or Michaels's advanced her arguments in briefing.  CalPERS offers not one citation to the

---

**2**     CalPERS's attempt to fault respondent Michaels for failure to transmit the administrative record to this court represents a misconception of which party bears the burden of supplying an adequate appellate record.

evidence expressly relied upon by the trial court in its statement of decision or Michaels in her respondent's brief. We would be justified in deeming CalPERS's appeal to be forfeited for failure to provide an adequate record and in ignoring the evidence in the record even after it was cited by page and line number by respondent. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739.)

Ultimately, as we note in our recitation of the factual and procedural history of this case, the evidence shows that CalPERS made a written offer of the DPM II position to Michaels on May 3, 2016, and Michaels made a written acceptance of that position on the same date. And, the evidence shows that CalPERS did not void her appointment until May 4, 2017. As we shall explain, these dates are dispositive under the applicable statutory scheme.

## C.

### *The Legislature's Definition of "Appointment"*

In construing the statutes that govern the voiding of a state civil service position, we apply well settled canons of statutory construction. " ' "The fundamental rule . . . is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute ' "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . ." ' " [Citation.]' (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 997.) [¶] ' "It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " [Citation.]' " (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004)

8

117 Cal.App.4th 350, 355, quoting *California Ins. Guarantee Assn. v. Liemsakul* (1987) 193 Cal.App.3d 433, 439.)

Here, section 19257.5 imposes a one-year limitation on the voiding of a civil service position. In its entirety, section 19257.5 provides: "Where the appointment of an employee has been made and accepted in good faith, but where the appointment would not have been made but for some mistake of law or fact that if known to the parties would have rendered the appointment unlawful when made, the department may declare the appointment void from the beginning *if the action is taken within one year after the appointment*." (Italics added.) Although section 19257.5 does not define the term "appointment," that same part of the Government Code includes section 18525. Section 18525 states that " 'Appointment' means the offer to and acceptance by a person of a position in the State civil service in accordance with this part." Being located in the same part, the definition "appointment" supplied in section 18525 applies to the one-year limitation on voiding appointments in section 19257.5.

The principles of offer and acceptance are well established in American jurisprudence. (*Arriagarazo v. BMW of North America, LLC* (2021) 64 Cal.App.5th 742, 748; *Steiner v. Mobil Oil Corp.* (1977) 20 Cal.3d 90, 99.) Thus, the Legislature has incorporated the concepts of offer and acceptance in statutory schemes, such as the contractual process governing offers to compromise legal actions under Code of Civil Procedure section 998. (*Arriagarazo*, at pp. 744, 748.) And, the Legislature has incorporated the concepts of offer and acceptance in section 18525 to define the date of appointment to a state civil service position. The plain meaning of section 18525 is that

9

an appointment occurs when an offer of the state civil service position is made and the employee accepts that position.[3]

Here, the administrative record shows that CalPERS offered Michaels the DPM II position on May 3, 2016. So too, the administrative record shows that Michaels accepted the job offer on the same day. The SPB's decision confirms that May 3, 2016, was the date that the DPM II position was offered to Michaels.[4] And, there is no dispute that Michaels accepted her appointment on May 3, 2016. It is also undisputed that CalPERS did not void her DPM II position until May 4, 2017. Because CalPERS did not void Michaels's appointment for more than one year, it did not meet with the limitations period set forth in section 19257.5. Accordingly, the trial court properly granted Michaels writ relief for untimely action by CalPERS.[5]

We reject CalPERS's assertion that, "[a]ccording to the state's official records, Michaels's appointment date – the date she started work in that position – was on May 5, 2016." Certainly, the Legislature could have chosen the date that a civil service employee starts work in a position as the date for the one-year limitation specified in section 19257.5. Instead, the Legislature chose the dates of offer and acceptance for the start of the limitations period. (§ 18525.) We would not effectuate the intent of the

---

[3]  Ordinarily, an offer precedes an acceptance. (*Schnabel v. Trilegiant Corp.* (2d Cir. 2012) 697 F.3d 110, 121.) In this case, both offer and acceptance occurred on the same date, May 3, 2016. Accordingly, that is the date of appointment.

[4]  We are aware that Michaels has, at various points in these proceedings, asserted that she was verbally offered and accepted the DPM II job on May 2, 2016. However, we have not found the record as submitted to us to support this assertion. In any event, the ample evidence in the record for an offer and acceptance date of May 3, 2016, provides support for the trial court's ruling that CalPERS did not act to void Michaels's position within one year.

[5]  There is no dispute that CalPERS and Michaels acted in good faith in offering and accepting the DPM II position.

10

Legislature by ignoring its clear definition of the appointment date for the one favored by CalPERS.

We also reject CalPERS assertion that the trial court found the dates of offer and acceptance to be absurd. Specifically, CalPERS argues: "The Superior Court admitted that an employee's probationary period cannot possibly run from the date a civil-service job is accepted, despite the literal language of Government Code Section 18525, because '[g]iven that the purpose of a probationary period is to give an employer the opportunity to observe and evaluate a new employee's job performance, *this would indeed be an absurd result*.' " (Italics added by CalPERS.)

The trial court's decision explains: "CalPERS and SPB worry that if section 18252's definition of the term 'appointment' applies to sections 19170 and 19171, then an employee's probation period could conceivably begin before their actual start date. Given that the purpose of a probationary period is to give an employer the opportunity to observe and evaluate a new employee's job performance, this would indeed be an absurd result. [Citations.] If this case involved the timeliness of CalPERS' rejection of Michaels during her probationary period, the Court might agree that section 18252's definition of 'appointment' did not apply. But, again, that is not the situation in this case."

Comparing the contention with the actual language employed by the trial court shows that CalPERS misconstrues the trial court's reasoning. The trial court did not "admit" that the probationary period "cannot possibly run from the date a civil-service job is accepted."[6] Instead, the trial court distinguished between the period to void an

---

[6]     CalPERS repeated mischaracterization of the trial court's findings and Michaels's contentions is unwelcome. For example, it its reply brief, CalPERS asserts: "The Superior Court made the same finding: Michaels was appointed to the DPM II position on May 5, 2016." The trial court did not find Michaels was appointed on May 5, 2016.

11

appointment and the period to evaluate an employee's performance. Thus, the trial court pointed out that the contention regarding probationary evaluation does not inform the statute governing the date of appointment for purposes of voiding an appointment. The distinction matters.

Here, the Legislature has clearly selected a one-year limitations period that relies on the dates of offer and acceptance of a civil service position. (§ 18525.) CalPERS, however, attempts to ignore the plain meaning of section 18525 by arguing that "Government Code Section 18525 does not define the date of an appointment, which occurs only when a new hire starts working at a new position for a state employer." This argument is frivolous because the entire purpose of the single sentence that constitutes section 18525 is stating that the term appointment "*means* the offer to and acceptance by a person of a position in the State civil service . . . ." (§ 18525, italics added.) Neither section 18525 nor section 19257.5 mention anything about a starting date for a civil service appointment. We adhere to the plain meaning of section 18525 where it states that the limitations period runs from the dates of offer and acceptance.

We note that CalPERS actually advances two dates for the commencement of the limitations period on voiding a civil service appointment: (1) the date "when a new hire starts working at a new position for a state employer," and (2) the date when "the State notes in its official records that a worker has started government employment." The first

---

To the contrary, the gravamen of the trial court's decision was to reject CalPERS argument that May 5, 2016, was the date of appointment. As another example, CalPERS asserts that "Michaels's contention in her brief to this Court that the State Personnel Board's finding is erroneous stands in stark contrast to her admissions to the lower court. [Citation.] Michaels's brief in support of her petition for a writ of administrative mandate in the Superior Court acknowledged that the state's State Exam and Certification Online System (ECOS) report noted that Michaels had a start date of May 5, 2016." Our review of Michaels's contentions shows that she has been consistent throughout these proceedings: she has maintained that the dates of offer and acceptance constitute the trigger for the one-year limitations period. Her acknowledgment of a start date of May 5, 2016, cannot be construed as any kind of admission.

proposed date corresponds to the date when *the worker* does something and the second proposed date corresponds to the date when *the State* does something. CalPERS does not explain the discrepancy in its proposed dates. We need not resolve the discrepancy, however, because neither proposed date comports with the clear statutory scheme enacted by the Legislature in sections 18525 and 19257.5.

## D.

### *Arbitrary Dates*

CalPERS argues that "[t]he Superior Court's determination that the date of acceptance of the job offer determined Michaels's appointment date disrupts, and undermines, California's civil-service law by needlessly creating multiple appointment dates for workers throughout their civil-service career, hindering the development of uniform civil-service law, and introducing disruptive contractual elements into purely statutory government employment." Based on this reasoning, CalPERS urges us to "decline to define the appointment date as the arbitrary date a successful job applicant accepted a job offer . . . ." We reject the argument.

To the extent that CalPERS's argument is that sections 18525 and 19257.5 do not rely on the dates of offer and acceptance, we have explained – above, in section C – that the trial court correctly construed the plain language of these statutes to rely on the dates of offer and acceptance for the start of the one-year limitation on voiding a civil service appointment.

To the extent that CalPERS argues sections 18525 and 19257.5 *cannot* rely on the dates of offer and acceptance, we reject the contention because we do not rewrite statutes whenever we might perceive some part of the Legislature's policy choices to be arbitrary. The length of a limitations period in which a civil service appointment may be voided is a question of public policy uniquely suited to the Legislature. "[I]t remains a legislative, and not a judicial, prerogative to assess the competing interests and to determine public policy. We must follow the language used by the Legislature 'whatever may be thought

13

of the wisdom, expediency, or policy of the act' (*Sanford v. Garamendi* [(1991)] 233 Cal.App.3d [1109,] 1124) and we emphasize '[o]ur preference for literalism is compelled by the constitutional doctrine of separation of powers.' (*Id*. at p. 1125). ' "It is an elementary proposition that courts only determine by construction the scope and intent of the law when the law itself is ambiguous or doubtful. . . . To allow a court . . . to say that the law must mean something different from . . . its language, because the court may think that its penalties are unwise or harsh would make the judicial superior to the legislative branch of the government, and practically invest it with lawmaking power. The remedy . . . is not in interpretation but in amendment or repeal." [Citation.]' (*Id*. at p. 1125.)" (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 293.)

CalPERS's arguments regarding whether the dates of offer and acceptance are arbitrary, impractical, and unwisely inject contractual principles into the civil service statutory scheme should be directed to the Legislature. "It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633, quoting *Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365.) Here, the Legislature has clearly chosen the dates of offer and acceptance. Notably, CalPERS makes no argument that the Legislature has exceeded its constitutional powers in enacting section 18525. We will not second guess the Legislature's policy choices underlying its definition of dates it has selected for the commencement of the limitations period for voiding a civil service appointment.

### E.

### *Prejudice*

Finally, CalPERS argues that "Michaels is not prejudiced by the appointment being voided on May 4, 2017 because she received notice before the voiding occurred

and she lacks the qualifications for the position." Neither of the two contentions subsumed within the same argument section has merit.

CalPERS's notice contention responds to an argument not made by Michaels. Michaels does not contend that she was denied due process or that she was prejudiced by lack of notice regarding the voiding of her appointment. More importantly, notice does not cure a statutory violation. (Cf. *Scar v. C.I.R.* (9th Cir. 1987) 814 F.2d 1363, 1370 [proper notice does not cure failure of governmental official to take statutorily required action].)

Next, CalPERS asserts that Michaels was not prejudiced because she lacked the minimum qualifications for the DPM II position. We reject the argument because sections 18525 and 19257.5 apply *only* to civil service employees who lack minimum qualifications. In these sections, the Legislature codified protections for state civil service employees who lacked the minimum qualifications but worked for more than one year and did so in good faith. (§§ 18525 & 19257.5.) If the lack of minimum qualifications were a defense for a state employer who voided an appointment, sections 18525 and 19257.5 would never apply. As the California Supreme Court has observed, " 'An interpretation that renders statutory language a nullity is obviously to be avoided.' " (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039, quoting *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357.) Accordingly, we reject CalPERS argument on grounds that it would render the applicable statutes a mere nullity.[7]

---

[7]     We deny Michaels's request for judicial notice as unnecessary to the disposition of this appeal.

15

## DISPOSITION

The judgment is affirmed.  Michaels shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　 HOCH, J.


We concur:


 /s/
RAYE, P. J.


 /s/
ROBIE, J.

16